# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Federal Trade Commission, *et al.*, *Plaintiffs,* v. GTCR BC Holdings, LLC, *et al.*, *Defendants*. | Case No. 1:25-cv-02391 Hon. Jeffrey I. Cummings M.J. Gabriel Fuentes |

### OPPOSED MOTION BY DEFENDANT SURMODICS, INC. TO COMPEL PHILIPS HEALTHCARE TO COMPLY WITH SUBPOENA[1]

Despite numerous accommodations offered by Surmodics, nonparty Philips Healthcare has fallen far short of its subpoena obligations. Over the last seven weeks, Surmodics has engaged in good faith efforts to try and address Philips' blanket, unsubstantiated, and shifting objections. *See, e.g.*, Ex. 3 (counsel correspondence). It agreed to forego custodial productions entirely, drop more than half of the Subpoena requests, and pare back the remaining ones to enable Philips' prompt provision of critical evidence necessary for the defense. But after representing it would search for responsive information, Philips went silent, resurfacing nearly two weeks later only to advise it would stand on its objections entirely despite its prior commitments. *See* Ex. 3 at 2-3. Philips' tactics leave Surmodics with no choice but to seek prompt relief from the Court.

---

[1] Faegre Drinker Biddle & Reath, LLP, counsel for Surmodics, Inc. ("Surmodics"), issued and served the subpoena to Philips Healthcare (d/b/a Philips North America LLC) ("Philips"), and negotiated Philips' compliance relating to the same. *See* Ex. 1 (Philips Rule 45 Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action) ("Subpoena").

Philips is a large-scale medical device manufacturer that develops, owns, and sells a broad portfolio of FDA-approved medical devices with lubricious coatings. Lubricious coatings generally are hydrophilic (water-loving) or hydrophobic (water-repelling, including PTFE coatings), and made from a variety of different chemicals and compounds.[2] Philips purchases lubricious coatings for some of its devices from third-party suppliers, including Surmodics. Like many other commercial device manufacturers, Philips self-produces, or "in-sources," lubricious coatings for some of its other devices. Philips is a key nonparty witness because its purchases of outsourced lubricious coatings and its use of in-sourced coatings bear on critical issues in the case, such as competition for outsourced coatings, as well as whether Plaintiffs' alleged relevant market is deficient because, among other reasons, it categorically excludes a commercially relevant product substitute—specifically, customers' self-produced lubricious coatings.

For the reasons discussed below, Surmodics respectfully requests that the Court order Philips to produce documents and information responsive to the following, narrowed Subpoena requests no later than ten days following entry of the Court's Order:

## NARROWED REQUESTS FOR PRODUCTION

Surmodics offered to significantly narrow the scope of the Subpoena requests during the parties' conferrals to address Philips' objections. *See* Ex. 3. Surmodics will hold itself to those prior offers and accordingly request only "sufficient to show" information from Philips for only 12 of the original 28 Subpoena requests that Philips can identify through reasonable searches of non-custodial sources:

---

[2] Plaintiffs' alleged product market is deficient because, among other reasons, it includes only one type of lubricious coating (hydrophilic), even though device manufacturers can and often do switch from hydrophilic to hydrophobic coatings, and vice versa, for a variety of devices included in Plaintiffs' alleged product market. *See also, e.g.*, Dkt. 85 (Surmodics' Am. Answer) at 3 ("Likewise, Plaintiffs completely ignore other lubricous coatings like hydrophobic and PTFE coatings, which can serve as alternatives for hydrophilic coatings.").

2

1. **Request No. 1: Device product/revenue**
    - Information sufficient to show FDA-approved devices manufactured or sold by Philips with lubricious coatings from Jan. 1, 2021, to present, including device name, description, therapeutic area, annual/monthly revenue figures, and market(s) in which each is offered/sold.

2. **Request Nos. 2-3: Outsourced lubricious coatings**
    - Information sufficient to show outsourced lubricous coating(s) used on each Philips device, including coatings supplier name, type of coatings product, quantity of coatings purchased, and total spend.

3. **Request Nos. 6, 17: In-sourced lubricious coatings**
    - Information sufficient to show Philips' self-produced (in-sourced) coating capabilities, including products with self-produced coatings, self-produced coatings development considerations and research and development costs, formulations, chemicals, compounds, mixes/reagents, processes, and equipment used (*e.g.*, UV-treated, thermal-treated, or both), and total capital costs.

4. **Request Nos. 2, 4, 17, 18, 19, 26, 27: Evaluation of lubricious coatings alternatives**
    - Information sufficient to show Philips' consideration of alternative lubricous coatings, including alternative formulas, chemicals, compounds, mixes/reagents, processes, or equipment (*e.g.*, UV-treated, thermal-treated, or both), and whether to change the type of lubricious coatings and/or substrates for any of Philips' devices.
    - Information sufficient to show Philips' testing and evaluation of lubricious coatings and potential alternatives, including its testing processes (whether in-sourced or outsourced), and testing results (whether between two outsourced coatings solutions or between in-sourced and outsourced coatings solutions).

## N.D. Ill. Local Rule 37.2 Compliance

Surmodics' counsel served the Subpoena to Philips on April 11, 2025, after Philips' in-house counsel agreed to accept service via email. *See* Ex. 1, Ex. 4 (email correspondence with Philips' in-house counsel). In compliance with Local Rule 37.2, undersigned counsel met and conferred with counsel for Philips four separate times via videoconference (April 23, April 30, May 6, and May 22), and additionally exchanged numerous written communications to try and reach resolution without burdening the Court. *See* Ex. 3; *see also* meet-and-confer table summary, *infra* at 5. Despite these good faith efforts, the parties confirmed they were at an impasse during their May 22 videoconference. *See* Ex. 3 at 1.

3

**BACKGROUND**

### A. Philips Sells Significant Volumes of Medical Devices with Both Outsourced and In-Sourced Lubricious Coatings in the United States.

Philips owns and sells a broad portfolio of FDA-approved, commercial medical devices.[3] Philips uses both outsourced and in-sourced lubricious coatings on various components of its devices.[4] The Subpoena seeks device sales information for Philips' device products with lubricous coatings sold in the United States and related information about the lubricious coatings used on such devices. *See* Request for Relief, *supra* at 2-3.

### B. Philips Provided Vague and Shifting Answers Regarding its Intent to Cooperate with the Subpoena.

Surmodics attempted to address Philips' burden and confidentiality concerns through the meet and confer process, paring the Subpoena requests down to a subset of "sufficient to show" requests to facilitate Philips' prompt compliance and address its various objections while still enabling Surmodics to receive critical discovery. Surmodics also provided prompt and fulsome answers and additional information in response to Philips' questions about the Subpoena. *See* Ex. 2 at 1-5. With this groundwork laid, Philips initially agreed to search for responsive documents before changing its position. During the final meet and confer on May 22, Philips' counsel advised

---

[3] Philips manufactures and/or sells devices under its own brand as well as legacy brands from devices acquired through prior transactions, including its 2017 acquisition of The Spectranetics Corporation ("Spectranetics") and its accompanying portfolio of vascular intervention devices for approximately $300 million. *See* https://www.philips.com/a-w/about/news/archive/standard/news/press/2017/20170809-philips-completes-acquisition-of-the-spectranetics-corporation.html (last accessed June 2, 2025).

[4] For example, Philips advertises at least some of its in-sourced hydrophilic coatings on its website, including its in-sourced coating product GlyDx$^{TM}$ that is used on an intravascular imaging catheter. *See* https://www.documents.philips.com/assets/20180620/bbbcb433187247fb8085a905011e4a74.pdf (last accessed June 2, 2025); *see also, e.g.*, https://www.philips.com/c-dam/b2bhc/master/education-resources/technologies/igt/images/omniwire-data-sheet.pdf (last accessed June 2, 2025) ("Philips proprietary coating" used on OmniWire$^{TM}$ guidewire device).

that it would stand on its objections to the Subpoena and not cooperate, as shown in the summary below:

| Date | Discussion Topics |
|---|---|
| April 23 meet and confer | <ul><li>Surmodics agrees to extend Philips' Subpoena response deadline from April 25 to May 2. *See* Ex. 3 at 6.</li><li>Surmodics emails priority requests and a copy of the Protective Order. *See id.*</li></ul> |
| April 30 meet and confer | <ul><li>Parties discuss Philips' burden and confidentiality concerns and the relevance and importance of the priority requests.</li><li>Surmodics provides more detail on priority requests and the protections afforded under the Agreed Protective Order in subsequent email correspondence. *See id.* at 4-5.</li></ul> |
| May 6 meet and confer | <ul><li>The parties discuss Philips' burden and confidentiality objections, Surmodics' priority requests in the Subpoena, and Surmodics' offers to negotiate a narrowed response to address Philips' concerns.</li><li>In a May 9 email correspondence following up on the May 6 conferral, Philips advises it will "determine what responsive documents it has" once it receives answers to additional questions. *See* Ex. 3 at 3.</li></ul> |
| May 9 to 21 party correspondence | <ul><li>Surmodics sends four emails to Philips providing additional answers to Philips about the narrowed subpoena requests and other information it requested but receive no substantive response from Philips. *See id.* at 1-2.</li></ul> |
| May 22 meet and confer | <ul><li>Philips advises it will not comply with Subpoena, creating an impasse. *See id.* at 1.</li></ul> |

## ARGUMENT

I. **THE COURT SHOULD GRANT THE MOTION BECAUSE THE SUBPOENA REQUESTS ARE HIGHLY RELEVANT AND NOT UNDULY BURDENSOME.**

Under Rule 45, parties may seek any nonparty information that is subject to discovery under Rule 26—namely, "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *SPS Techs., LLC v. Boeing Co.*, No. 19-cv-3365, 2019

5

WL 2409601, at *3 (N.D. Ill. June 7, 2019) (quoting Fed. R. Civ. P. 26(b)(1)). Courts address disputes over nonparty subpoenas by evaluating whether a subpoena's requests are "reasonable in the circumstances," *Gaines v. Chicago Bd. of Ed.*, No. 19-cv-775, 2022 WL 1292248, at *2 (N.D. Ill. Apr. 29, 2022) (quoting *McKevitt v. Pallasch*, 339 F.3d 530, 533 (7th Cir. 2003)), and consider factors such as "timeliness, good cause, utility, and materiality," *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993 (7th Cir. 2002). "[T]he burden rests upon the objecting party to show why a particular discovery request is improper." *See McDaniel v. Loyola Univ. Medical Ctr.*, No. 13-cv6500, 2015 WL 13901027, at *2 (N.D. Ill. June 23, 2015) (citation omitted) (granting motion to compel in part and ordering third party to produce additional materials responsive to subpoena).[5]

### A. The Subpoena Targets Information that is Highly Relevant to the Claims and Defenses in the Case.

Plaintiffs allege a relevant product market that is "no broader than outsourced hydrophilic coatings." Dkt. 66, ¶ 38. Surmodics, in turn, seeks information from Philips regarding its purchases of outsourced lubricious coatings and use of self-produced lubricous coatings because both kinds of coatings are highly relevant to the Court's determination of whether Plaintiffs' alleged product market is properly drawn and grounded in commercial realities. Philips' identification and evaluation of lubricious coatings products for its various devices is especially valuable because Philips purchases some, but not all lubricious coatings used on its devices from Surmodics. Accordingly, information that provides a full picture of Philips' amount of lubricious

---

[5] This Court has jurisdiction to hear this Motion under 15 U.S.C. § 23, which provides that in United States government-party actions, "subpoenas for witnesses who are required to attend a court of the United States in any judicial district in any [civil case] arising under the antitrust laws may run into any other district." *See also, e.g.*, Dkt. 71, CMSO, at 13 (providing for nationwide service of process for Rule 45 subpoenas under 15 U.S.C. § 23); *F.T.C. v. Kroger Co.*, No. 3:24-cv-00347, 2024 WL 3400098 at *3 (D. Or. July 12, 2024) ("15 U.S.C. § 23 confers nationwide enforcement power over subpoenas issued pursuant to that provision."); *F.T.C. v. Meta Platforms, Inc.*, No. 20-cv-3590, 2025 WL 98553 at *3 (D.D.C. Apr. 2, 2025) (same).

6

coatings purchases, from which companies (including Surmodics, and any other outsourced coatings suppliers), in addition to Philips' in-sourcing of the same kinds of products, is highly valuable discovery necessary to test Plaintiffs' allegations.

### B. The Subpoena Requests Are Proportional and Not Unduly Burdensome.

The Subpoena requests, which were narrowed substantially during the meet and confer process, are proportional to the needs of the case, as they target information relevant to its most important issues, specifically Plaintiffs' alleged product market and their allegations regarding harms to future competition. *Accord* Dkt. 66, ¶¶ 8-9, 38, 91; *see* Fed. R. Civ. P. 26(b)(1) (proportionality includes the importance of the issues at stake, parties' relative access to relevant information, importance of the discovery in resolving the issues, and whether the burden of discovery outweighs the benefit); *see, e.g.*, *Bankers Life and Casualty Co. v. Alshoubaki*, No. 16-cv-5975, 2016 WL 11940391, at *8 (N.D. Ill. June 27, 2016) (granting motion to compel nonparty responses to narrowed subpoena requests based on Rule 26's proportionality factors). There is no other pathway to the information in Philips' possession, either. Philips is a large-scale device manufacturer with numerous devices requiring lubricious coatings, with self-production capacity for lubricious coatings that are used on some devices in its portfolio, making the requested information uniquely valuable to the claims and defenses in the case. *See id.*

Additionally, the narrowed requests are not unduly burdensome when weighed against the requested information's value. Here, Philips provided boilerplate objections to every request without factual details for any of its positions; it further declined to substantiate its burden during the meet and confer process. *See* Exs. 2-3. Courts regularly reject unsupported burden assertions like those Philips raises here. *See, e.g.*, *Rossman v. EN Eng'g LLC*, 335 F.R.D. 171, 173 (N.D. Ill. 2020) (holding that boilerplate objections have "little real meaning"); *Reed v. Illinois*, 318 F.R.D. 77, 79 (N.D. Ill. 2016) (finding third party did not meet burden to show the subpoena was unduly

7

burdensome by "relying exclusively on unadorned assertions regarding … the subpoena"). "One claiming undue burden must do more than say it is so," *PsyBio*, 2021 WL 4459527, at *3 (*citing EEOC v. Aerotek, Inc.*, 815 F.3d 328, 334 (7th Cir. 2016)), and Philips has declined to do so. The Court should thus order Philips to comply with the Request for Relief set forth in this Motion, *see supra* at 2-3.

### II. PHILIPS' CONFIDENTIALITY CONCERNS ARE UNSUBSTANTIATED AND UNFOUNDED.

In its written objections and during the parties' conferrals, Philips also raised concerns about disclosing confidential and commercially sensitive information because Surmodics sells medical devices that compete with some of Philips' devices. While this is not disputed—Surmodics sells a handful of devices that target the same or at least similar therapeutic areas as certain of Philips' devices, *see* Ex. 2 at 4 (acknowledging overlap between the companies' devices)—Philips' position is that its competitor-status renders it exempt from providing *any* response to the Subpoena. *See* Ex. 2;[6] Ex. 3 at 4. This is an untenable position. And rather than engage with Surmodics on these issues, Philips instead insisted that Surmodics prove a negative, asking Surmodics to show it did not compete with Philips in any line of business, at any level of the companies' respective enterprises, before it would even consider complying with the Subpoena in any form. *See* Ex. 3 at 5 (requesting undersigned counsel to "review its own records to determine what documents it has in its possession to show that Philips and Surmotics [sic] are not competitors"). Upon receiving Surmodics' written response addressing Philips' concerns regarding disclosures of competitively sensitive information to competitors in subpoena contexts, counsel

---

[6] Philips raised a blanket, general objection to the Subpoena as calling for the "disclosure of confidential information, proprietary information, and/or highly sensitive commercial information." Ex. 2 at 3. And in its boilerplate objections to every single Subpoena request, Philips objected to each request as "seeking proprietary and highly sensitive commercial information" without providing any further details. *See* Ex. 2.

8

said Philips would agree to search for responsive information, suggesting the written response satisfied Philips' concerns. *See id.* at 4 ("Philips confirmed that it is willing to determine what responsive documents it has."). But Philips did not follow through, instead ceasing to engage and thereby prejudicing Surmodics' ability to obtain necessary discovery. *See id.* at 1-3.

Philips' concerns about disclosing confidential information are sufficiently handled through the robust protections in the Agreed Protective Order. *See* Dkt. 61. The Agreed Protective Order permits nonparty Philips to "designate any responsive Document or portion thereof as Confidential Material[,]" *id.* at 2-3, and only *outside* counsel and their retained experts may access materials designated confidential by nonparties—*in-house* counsel access is prohibited, *see id.* at 4-5. Courts regularly compel parties and third parties to produce relevant information when an adequate protective order is in place, particularly one authorizing outside counsel-access only like the Agreed Protective Order does. *See* Dkt. 61*, ¶* 7(e); *see, e.g.*, *Methodist Health Servs. Corp. v. OSF Healthcare Sys.*, No. 14-cv-7748, 2014 WL 5465401, at *2 (N.D. Ill. Oct. 27, 2014) (concluding that the case protective order limiting information to outside counsel and retained experts sufficiently addressed nonparty competitor's concerns regarding disclosure of its confidential information); *Meridian Labs., Inc. v. Oncogenerix USA, Inc*., No. 18-cv-6007, 2021 WL 4768256 at *4 (N.D. Ill. 2021) (Cummings, J.) (concluding that third party's "concerns in handing over responsive documents to a company that it alleges is developing a competing product" would be alleviated by amending the case protective order to allow for outside counsel access only).

During the conferral process, as well, Surmodics agreed to accept documents responsive to the narrowed and "sufficient to show" Subpoena requests set forth in the Request for Relief to further mitigate Philips' concerns about disclosing confidential and/or proprietary business

9

information. The narrowed requests from the Subpoena also purposefully target only key and highly relevant information from the original requests, outweighing any additional concerns or burden objection Philips might still raise. *See, e.g., Alshoubaki*, No. 16-cv-5975, 2016 WL 11940391, at *6 (concluding that "the relevance and probative value of the [narrowed requests for information sought by a Rule 45 document subpoena] substantially outweigh[ed] any undescribed burden" asserted by nonparty subpoena recipients).

Finally, as the objecting party, Philips bears the burden to demonstrate any undue burden it believes it would incur, but it refused to substantiate its objections in its written responses or during the parties' conferrals. *See, e.g.*, *Guster-Hines v. McDonald's USA, LLC*, No. 20-cv-117, 2024 WL 4242009, at *2 (N.D. Ill. May 21, 2024) ("[O]ne claiming undue burden must do more than intone the phrase.") (citation omitted). Regardless, Philips' undeveloped competitor-status concerns are less pronounced in this case, as the disputed issues involve lubricious coatings applied to medical devices, and the requests do not seek detailed information about the devices themselves.

The targeted information requested from Philips is not only highly relevant and proportional to the needs of the case, but critically necessary to present a complete and accurate competitive landscape and market definition to the Court. The Court should grant Surmodics' Motion.

## CONCLUSION

For the foregoing reasons, Surmodics respectfully requests that the Court order Philips to comply with the Subpoena by promptly producing the materials set forth in the Request for Relief no later than within 10 days of the Court's Order.

10

| | |
|---|---|
| Dated: June 2, 2025 | _/s/ Joshua P. Mahoney_ |
| | Joshua P. Mahoney |
| | FAEGRE DRINKER BIDDLE & REATH LLP |
| | 320 South Canal Street, Suite 3300 |
| | Chicago, IL 60606 |
| | Tel: (312) 212-6520 |
| | josh.mahoney@faegredrinker.com |

Paul H. Saint-Antoine (*pro hac vice*)
Joanne C. Lewers (*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Ste. 2000
Philadelphia, PA 19103
Tel: (215) 988-2990
Tel: (215) 988-2712
paul.saint-antoine@faegredrinker.com
joanne.lewers@faegredrinker.com

Jonathan H. Todt
Matthew R. Lechner (*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
1500 K Street, NW, Suite 1100
Washington, D.C. 20005
Tel: (202) 230-5832
Tel: (202) 230-5222
jonathan.todt@faegredrinker.com
matthew.lechner@faegredrinker.com

Anna Sallstrom (*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 S. 7th Street
Tel: (612) 766-7000
anna.sallstrom@faegredrinker.com
Minneapolis, Minnesota 55402

*Counsel for Defendant Surmodics, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 2, 2025, I electronically filed a true and correct copy of the foregoing document using the United States District Court for the Northern District of Illinois' CM/ECF System, which will send a notice of electronic filing to all counsel of record.

*/s/ Joshua P. Mahoney*

*Counsel for Defendant Surmodics, Inc.*