# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>        Plaintiff,<br><br>    v.<br><br>GTCR BC HOLDINGS, LLC AND SURMODICS, INC.,<br><br>        Defendant. | Civil Action No. 1:25-cv-02391<br><br>**NON-PARTY PHILIPS HEALTHCARE'S (D/B/A PHILIPS NORTH AMERICA LLC) OPPOSITION TO DEFENDANT SURMODICS, INC.'S MOTION TO COMPLY WITH SUBPOENA TO PRODUCE DOCUMENTS** |

## OPPOSITION TO DEFENDANT SURMODICS, INC'S MOTION TO COMPLY WITH SUBPOENA

Non-Party Philips Healthcare, d/b/a Philips North America LLC ("Philips") files this opposition to Defendant Surmodics, Inc.'s ("Surmodics") Motion to Comply to Subpoena for Production of Documents.

**I.      INTRODUCTION**

Surmodics issued a subpoena to Philips seeking a broad array of information, from confidential sales data to proprietary internal research. Understandably, as a direct competitor of Surmodics, Philips served objections to the requests to preserve its rights while it conducted good-faith and intensive searches. Philips also conferred with Surmodics' counsel on several occasions to negotiate streamlined requests that would adequately protect Philips' proprietary and confidential information and ensure that the searches it would conduct pursuant to the requests did not cause Philips undue burden. During each meeting between counsel for Philips and Surmodics, Philips made it very clear that it was actively working to determine whether any responsive documents existed, while also clarifying that the original requests and narrowed requests would cause undue burden on Philips.

Instead of continuing to work with Philips to negotiate an appropriate scope of requests that would satisfy all parties, Surmodics filed the Motion containing multiple misrepresentations related to Philips' good-faith searches and rushed to an impasse between the parties to get documents on an accelerated timeline given the looming trial. Philips has met its burden to search for documents and has even continued to conduct searches while the Motion was pending. Therefore, Philips asks this Court to deny the Motion.

## II. FACTUAL BACKGROUND

### A. Philips Conducted Comprehensive Searches for Documents in Good Faith.

Upon receipt of the subpoena, Philips' counsel promptly engaged in good-faith discussions with Surmodics' counsel to narrow the scope of the requests because the original subpoena requests were overbroad and explained its basis for its objections. After multiple meet and confer sessions between counsel, Surmodics' counsel attempted to narrow the scope of the requests, which it describes as the "Narrowed Requests" in its Motion, and seeks the following four categories of documents: (1) device information and revenue for products containing lubricious coatings; (2) information regarding products containing outsourced lubricious coatings; (3) information regarding products containing internally-sourced lubricious coatings; and (4) evaluation of "lubricious coatings alternatives." Motion, at p. 3. Philips then engaged in a multi-faceted search to determine if it had responsive documents in its possession. Philips did not, as Surmodics suggests, stand idle without conducting searches. Between April 25, 2025 and June 12, 2025, Tess Harper, Head of Legal for Image Guided Therapy-Devices at Philips, met with eleven different Philips employees across various divisions within the company. Declaration of Tess Harper ("Harper Decl."), ¶¶ 3-4.

During the meet and confer sessions, Philips explained the basis for its objections in its written responses to the subpoena, including that the requests were unduly burdensome because they sought expansive categories of documents that would require searches and productions far beyond Philips' duty as a non-party. With respect to the "Narrowed Requests," Philips informed Surmodics that it did not have such documents, and that not only would searching for such information still be unduly burdensome due to the expansive nature of the requests, but doing so would also require Philips to create documents responsive to the subpoena, which, as explained further below, is unduly burdensome to a non-party.

-3-

**B.    Surmodics is Misleading the Court on Counsels' Meet and Confer Sessions to Portray Philips as Failing to Search for Documents.**

Philips' counsel informed Surmodics' counsel during the first time the parties met and the last time after the requests were narrowed that Philips needed more specific information because the requests did not contain sufficient detail to allow Philips to conduct a search; otherwise, without such detail, the requests were overbroad and would unduly burden Philips. To this day, Philips is willing to work with Surmodics to determine a refined scope of documents that would not cause Philips undue burden in searching for them, involve disclosure of highly sensitive and proprietary information, or require Philips to create documents that do not currently exist.

Surmodics falsely claims that Philips "refused to substantiate its objections . . . during the parties' conferrals." Motion, at p. 10. Tellingly, the written communications between the parties does not evidence any refusal by Philips to explain its valid objections. *Id.* at Ex. 3. During the May 22, 2025 meet and confer between the parties, Philips' counsel told Surmodics' counsel that the information sought was not in Philips' possession and would require Philips to create documents that do not currently exist. Additionally, Philips' counsel confirmed that it would be unduly burdensome to conduct a broad search considering its non-party status. Philips' counsel also reiterated that Philips was concerned with disclosing highly confidential and proprietary information pursuant to the broad requests given that Surmodics is a direct competitor.

Moreover, the Motion falsely suggests that Philips committed to a document production. *See* Motion, at 1. Philips ***never*** informed Surmodics that it would indeed produce documents; it merely promised to search for responsive documents, which it has done, as is evident from the communications that Surmodics references in its Motion. *See id.*, Ex. 3.  As explained above, Philips conducted a comprehensive search and informed Surmodics that it did so.

**III.     ARGUMENT**

    **A.     Non-Party Status is a Significant Consideration in Whether Subpoena Requests are Unduly Burdensome.**

Non-party status "is a factor entitled to special weight in evaluating the balance of competing needs." *Taylor v. Kilmer*, 18 CV 7403, 2020 WL 606781, at *2 (N.D. Ill. Feb. 7, 2020); *see also Little v. JB Pritzker for Governor*, No. 18 C 6954, 2020 WL 1939358, at *1 (N.D. Ill. Apr. 22, 2020) ("Non-parties are afforded this consideration because they have a different set of expectations than parties . . . . While parties to a lawsuit must accept the invasive nature of discovery, non-parties experience an unwanted burden.") (citation omitted); *Guy Chem. Co. v. Romaco AG*, 243 F.R.D. 310, 313 (N.D. Ind. 2007) (citations omitted). Furthermore, courts must be particularly mindful of the relevance of the material sought under the non-party subpoena. *See Pursley v. City of Rockford*, No. 18 CV 50040, 2020 WL 1433827, at *2 (N.D. Ill. Mar. 24, 2020) (non-parties do not need to "yield discovery that causes undue burdens, as evidenced by the protections in the Federal Rules").

Therefore, "the court should be particularly sensitive when weighing the probative value of the information sought against the burden of production on the non-party." *Martin v. United States*, No. 13-CV-3130, 2015 WL 7783516, at *2 (C.D. Ill. Dec. 3, 2015) (internal quotation marks and citation omitted). Cases discussing Rule 45 have "consistently held that 'non-party status' is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue." *United States ex rel. Tyson v. Amerigroup Illinois, Inc.*, No. 02-C-6074, 2005 WL 3111972, at *4 (N.D. Ill. Oct. 21, 2005).

In addition to the non-party status of the subpoenaed entity, courts consider a number of other factors when determining if the burden imposed by a subpoena is "undue," including whether: (1) the information requested is relevant; (2) the party requesting the information has a

substantial need for the documents; (3) the document request is overly broad; (4) the time period the request covers is reasonable; (5) the request is sufficiently particular; and (6) whether compliance with the request would, in fact, impose a burden on the subpoenaed party. *Am. Soc. of Media Photographers, Inc. v. Google, Inc.*, No. 13 C 408, 2013 WL 1883204, at *2 (N.D. Ill. May 6, 2013) (citing to *Northwestern Memorial Hospital v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004)). Relatedly, a court may limit discovery pursuant to Rule 26(b)(2)(c) if it determines that the requested documents can be obtained from a more convenient or less burdensome source, the requesting party had an opportunity to obtain the information through the normal discovery process, or the information sought is cumulative or duplicative of other discovery. *Earthy, LLC v. BB&HC, LLC*, No. 16 C 4934, 2017 WL 4512761, at *3 (N.D. Ill. Oct. 10, 2017).

With respect to the first factor, the information sought by Surmodics is not relevant to the issues in the complaint. The Complaint alleges that the Proposed Transaction would lessen competition in the *hydrophilic coating market*; no other market is mentioned in the Complaint. Complaint, at p. 2. Thus, the relevant scope of documents should specifically pertain to the hydrophilic coating market. However, Surmodics unilaterally attempts to expand the scope of relevance of the dispute by alleging that all "lubricous coatings"–and even all types of "alternatives" to lubricious coatings–should be deemed relevant, and thereby seeks a broad swath of information from non-party Philips beyond issues actually relevant in the Complaint. Surmodics is asking this Court to require Philips to review and produce a substantial amount of documents, including those with confidential and proprietary information, because it unilaterally deems all "lubricous coatings" and "alternative" coatings to be relevant. Such a request is unduly burdensome considering that hydrophilic coating is the only type of coating relevant in the Complaint.

With respect to the second factor, Surmodics has not shown that it substantially needs the requested information from Philips. In particular, Surmodics has not shown that it can only obtain the information it requests from Philips or necessarily needs clearly confidential and proprietary information from Philips in order to defend its action. Moreover, Surmodics has not shown any attempt to obtain the information it seeks from other companies who purchase or produce lubricous coatings, or from data already in the FTC's (*i.e.*, a party's) possession. *See Earthy, LLC*, 2017 WL 4512761, at *3.

With respect to the third factor, all of Surmodics' "Narrowed Requests" seek a substantial amount of information regarding "lubricous" and "alternative" coatings. "Lubricous coatings" is a generic term that could entail many different chemical compounds, and the term "alternative coatings" is even more generic and entails a broader category of chemical compounds. Harper Decl., ¶ 13. When Philips attempted to conduct a search for "lubricious" and "alternative" coatings on its quality management suite, the results included thousands of bills of materials and confidential proprietary documents. *Id.*, ¶¶ 13-14.

But, as stated, the Complaint only alleges issues related to the hydrophilic coating market, which is only one type of lubricious coating. Complaint, at p. 2. The overbroad nature of these requests render it unduly burdensome for Philips to conduct additional searches for the information sought.

With respect to the fourth factor, Surmodics' requests are unreasonable in time. Category one of the Narrowed Requests asks for a considerable amount of information related to lubricous coatings from January 1, 2021, to present. Surmodics fails to explain why it is reasonable to seek over four years of information. That timeframe was not mentioned in the Complaint, and at no point did Surmodics' counsel explain why such a broad scope was needed for its defense. Further,

categories two, three, and four of the Narrowed Requests are unlimited in time, and are therefore even broader than category one. It is unreasonable to require Philips to search for overbroad categories of documents spanning an unlimited time period.

Regarding the fifth factor, Surmodics' requests are not sufficiently particular. "Lubricous coatings" is a generic term that could entail many different chemical compounds, and the term "alternative" coatings is even less particular. Harper Decl., ¶ 13. Philips has already conducted searches, which resulted in an exceptionally large amount of search results. *Id.*, ¶¶ 13-14. Conducting further searches without requiring Surmodics to further particularize their requests would unduly burden Philips because Surmodics has not provided enough details to help Philips help identify the precise information it is seeking.

With respect to the sixth factor, requiring Philips to produce documents containing proprietary information and create documents to conform to Surmodics' requests would impose an undue burden on Philips. If Philips were required to produce documents pursuant to the subpoena, Philips would need to assign several design engineers to manually search thousands of bills of materials, thereby removing them their designated job responsibilities, and then create documents for the sole purpose of producing documents that conform to Surmodics' overbroad requests. Harper Decl., ¶¶ 10, 14, 15. Moreover, using the broad search terms required to elicit information pursuant Surmodics' requests resulted in thousands of bills of materials and confidential proprietary documents, all of which would have to be reviewed manually by engineers to determine which are potentially relevant. *Id.*, ¶¶ 13-14. Relatedly, requiring Philips to produce documents pursuant to the subpoena could entail disclosure of proprietary information relating to Philips' advanced information pipeline without any protections, including, for example, confidential projects in research and market development stages. *Id.*, ¶ 8. Disclosure of such

material would destroy the economic value of confidentially developed projects for which Philips has invested hundreds of millions of dollars, thereby severely economically and commercially harming Philips. *Id.* Moreover, the requests seek confidential pricing information from Philips, which could be used by other hydrophilic coating suppliers against Philips' to gain leverage over pricing of hydrophilic coatings purchased by Philips. *Id.*

Ultimately, any probative value that can be retained from Philips' production is highly outweighed by the undue burden imposed on Philips by requiring it to review an overly broad set of documents containing proprietary information and create documents to satisfy Surmodics' broad requests. Considering that Philips is a non-party to this action, Surmodics requests are particularly unduly burdensome. *See Pursley*, 2020 WL 1433827, at *2 (non-parties do not need to "yield discovery that causes undue burdens").

### B. Surmodics Misrepresents Legal Authority it Relies On in its Motion.

Surmodics also misrepresents the authority relied on in its Motion and thus contorts the responsibilities of non-parties in responding to document subpoenas. For example, the *Meridian Lab'ys, Inc.* case relied on by Surmodics is critically different and easily distinguishable because it involved a party to the litigation, not a non-party, and the subpoena requests at issue were directly relevant to that party's claimed damages, and thus the subpoenaed party singlehandedly made the subpoena requests relevant. *Meridian Lab'ys, Inc. v. OncoGenerix USA, Inc.*, No. 18 CV 6007, 2021 WL 4768256, at *4 (N.D. Ill. Jan. 6, 2021). Thus, Surmodics is incorrect in asserting that *Meridian Labs, Inc.* involved a "third party." Motion, at p. 9. This difference is critical because "'non-party status' is a significant factor to be considered," *Martin*, 2015 WL 7783516, at *2, and non-parties have a "different set of expectations than parties," *Little*, 2020 WL 1939358, at *1. Unlike *Meridian Lab'ys, Inc.*, Philips is ***not*** a party to the litigation and should be afforded special consideration in determining the undue burden imposed on Philips. Surmodics also inaccurately

portrays the holding of *Bankers Life & Cas. Co. v. Alshoubaki* as providing that narrowed requests are sufficient to make subpoena requests proportional under Rule 26. *See also Bankers Life & Cas. Co. v. Alshoubaki*, No. 16 C 5975, 2016 WL 11940391, at *4 (N.D. Ill. June 27, 2016) (information and documents sought by the subpoenaing party was previously determined by court order to be relevant).

### C. Surmodics is Seeking Materials that Philips does not Have and Would Have to Create, which is Unduly Burdensome.

Non-parties are not required to create documents to comply with a subpoena request because doing so is unduly burdensome. *Taylor v. Kilmer*, No. 18 CV 7403, 2020 WL 606781, at *3 (N.D. Ill. Feb. 7, 2020) (quoting *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 168 F.R.D. 630, 633 (N.D. Ill. 1996)) (a subpoena requiring a non-party to create documents not already in its possession "create an undue burden and are improper" because Rule 45 "does not contemplate that a non-party will be forced to create documents that do not exist").

During the meet and confer sessions, Surmodics informed Philips that it would be willing to receive high-level sales summaries of Philips' device and product revenue, as well as high-level information related to Philips' internal lubricous coatings data. While such documents could theoretically include the information that Surmodics seeks without containing any confidential proprietary information, Philips does not have documents with such summary-level information, and thus ordering Philips to produce such documents requires it to create documents. Doing so would impose an undue burden on Philips because it would require Philips to deploy at least two design engineers to manually search thousands of bills of materials thus removing them their job responsibilities, and then create documents for the sole purpose of producing documents pursuant to Surmodics' subpoena. Harper Decl., ¶¶ 10, 13-15.

### D. Disclosure of the Materials Sought by Surmodics Would Require Philips to Breach Non-Disclosure Agreements with Lubricous Coating Suppliers.

Disclosure of at least some of the information sought by the Surmodics subpoena would violate the terms of non-disclosure agreements that Philips has with several lubricous coating suppliers. Harper Decl., ¶ 12. The ramifications as a result of violating the non-disclosure agreements also imposes an undue burden on Philips in producing documents pursuant to the subpoena.

### E. The Current Version of the Confidentiality Order Does not Adequately Protect Philips because it Allows Sensitive, Proprietary Information to be Accessed by its Competitors and the Public.

The Narrowed Requests expressly seek confidential proprietary information from Philips, which is highly burdensome considering that Surmodics is a direct competitor of Philips in the peripheral interventional device market. Harper Decl., ¶ 7. Disclosure of such information would economically harm Philips by making internal product and chemical development data available to Surmodics and the public. *Id.*

In particular, categories one and two seek confidential information such as Philips' internal revenue data for an unspecified number of medical devices and internal expenditures. Categories three and four are even more intrusive—the third category seeks information regarding Philips' in-house coating capabilities, including internal "coatings *development considerations*, . . . and *research and development* costs, *formulations, chemicals, compounds, mixes/reagents, processes, and equipment used*," and the fourth category seeks information regarding Philips' internal "*consideration of alternative lubricous coatings*, including alternative formulas, chemicals, compounds, mixes/reagents, processes, or equipment (*e.g.*, UV-treated, thermal-treated, or both), and whether to change the type of lubricious coatings and/or substrates for any of Philips' devices" and "*testing and evaluation of lubricious coatings and potential alternatives*." Motion, at p. 3

(emphasis added). The request for information relating to "testing and evaluation" of "alternative lubricous coatings" clearly seeks disclosure of confidential projects in advanced research and market development stages. Harper Decl., ¶ 8. Moreover, given that Surmodics' Pounce Venous Thrombectomy Solution directly competes with Philips' QuickClear Thrombectomy Solution, disclosure of testing and evaluation information could compromise the economic value of Philips' products that compete with Surmodics. Thus, the requests expressly seek information related to Philips' internal research and development, without any explanation as to why such sensitive information is necessary for Surmodics' defense or relevant to the action.

Section 11 of the Confidentiality Order, which governs use of Confidential Material at trial, does not guarantee that a document designated as Confidential under the order will never reach public view. ECF No. 61, at p. 6. There is no assurance in the current version of the Confidentiality Order that the documents will not be disclosed to Surmodics by use at trial. The release of highly proprietary information would also economically harm Phillips, under the guise of assisting with the defense of its direct competitor Surmodics. Harper Decl., ¶¶ 7, 11. Moreover, the Confidentiality Order expressly provides that Confidential Material may be disclosed to other governmental entities. ECF No. 61, at p. 5. Disclosure of proprietary information, such as products in developmental and research stages, would severely harm Philips and eliminate economic value invested in such product. Harper Decl., ¶¶ 7, 11.

Objections on the basis of disclosure of proprietary information is a valid objection to subpoena requests seeking disclosure of such information to a competitor. *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, No. 04 C 5312, 2006 WL 3541933, at *2 (N.D. Ill. Dec. 5, 2006) (denying motion to compel because it sought sensitive information from competitors and it was unlikely

that the relevance of the information was too tangential to support discovery of critical competitive information).

      **F.    If Philips is Ordered to Produce Documents, this Court Should Impose Limitations on Surmodics' Unduly Burdensome Requests.**

Should the Court find that Philips must produce documents, Philips requests that the Court order (1) Surmodics and Philips to confer further to determine a more appropriate scope of production that would protect Philips' proprietary information and limit the requests to only seek information directly relevant to the issues in the Complaint, (2) the parties to confer regarding revising the Confidentiality Order to ensure that any information produced by Philips is inaccessible to Surmodics and cannot be used as evidence, including at trial, and (3) allow at least thirty days to produce documents, rather than Surmodics' request for a ten-day production window.

**IV.    CONCLUSION**

For the foregoing reasons, Philips respectfully requests this Court to deny the Motion. Philips has complied with its non-party subpoena obligations. Ordering Philips to conduct further sprawling searches and produce confidential proprietary data would unduly burden Philips and compromise proprietary information.

Dated: June 23, 2025

                                    By:/s/ Randy Jones
                                          Randy K. Jones
                                          RKJones@mintz.com
                                          MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
                                          3580 Carmel Mountain Road, Suite 300
                                          San Diego, CA  92130
                                          Phone: 858-314-1500
                                          Fax: 858-314-1501

                                          *Attorneys for Non-Party Philips North America LLC*

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 23, 2025, I electronically filed a true and correct copy of the foregoing using the United States District Court for the Northern District of Illinois' CM/ECF System, which will send a notice of electronic filing to all counsel of record.

                                            /s/ Randy Jones
                                                Randy Jones