UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Federal Trade Commission, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>GTCR BC Holdings, LLC, *et al.*,<br><br>*Defendants*. | Case No. 1:25-cv-02391<br><br>Hon. Jeffrey I. Cummings<br>M.J. Gabriel Fuentes |

**SURMODICS' REPLY IN SUPPORT OF OPPOSED MOTION
TO COMPEL PHILIPS HEALTHCARE TO COMPLY WITH SUBPOENA**[1]

Philips' opposition brief rewrites the discovery record and ignores Surmodics' narrowed Subpoena requests. *See* Dkt. 111 ("Mot."), at 2-3. Philips feigns confusion about the information sought by Surmodics, chastising it for "rush[ing] to an impasse" in light of its "looming trial." Dkt. 155 ("Resp."), at 2. None of this is true. Indeed, Philips' alternative suggested relief—seeking even more meet and confers and an additional 30 days to produce a single document, *see id.* at 13—shows Philips' true intent, which is simply to run out the clock.

Philips is a major medical device manufacturer with a broad portfolio of devices that use lubricious coatings, including hydrophilic coatings. Surmodics' counsel also gave Philips' counsel a list of 12 specific Philips devices with hydrophilic coatings to enable Philips' prompt production of targeted materials called for by the narrowed requests. *see* Mot. at 4-5; *id.*, Ex. 3 at 3. The

---

[1] Faegre Drinker Biddle & Reath, LLP, counsel for Surmodics, Inc. ("Surmodics"), issued and served the subpoena to Philips Healthcare (d/b/a Philips North America LLC) ("Philips"), and negotiated Philips' compliance relating to the same. *See* Dkt. 111, Ex. 1 (Philips Rule 45 Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action) ("Subpoena").

narrowed requests target information about those exact devices, such as (i) information sufficient-to-show sales revenue, (ii) information sufficient to show the type of lubricious coatings used on those devices, whether out-sourced or in-sourced, and (iii) information sufficient to show Philips' evaluation of which lubricious coatings it has considered for those devices. *See* Mot. at 2-3. In opposition, Philips engineers an irrelevant burden argument that describes a far-reaching investigation Surmodics never asked Philips to undertake. This investigation completely ignored Surmodics' repeated provisions of information to Philips, including ignoring the device list that Surmodics' counsel gave to Philips' counsel specifically to enable a prompt and efficient search for responsive materials. *See* Resp. and Dkt. 155-1 ("Harper Decl.").

Philips also raises a host of misleading assertions about what the narrowed requests seek, claiming that sufficient-to-show requests for aggregated sales revenues information, for example, would disclose "proprietary" and other "confidential pricing information from Philips." Resp. at 8-9. But Surmodics does not dispute that it sells a handful of devices targeting the same therapeutic areas as Philips, Mot. at 8, and Philips does not explain why the Agreed Protective Order's limitations on disclosures, even to party in-house counsel, are not sufficient to address such concerns. Nor does Philips explain how these concerns apply to aggregated revenue data and higher-level information about its use of lubricious coatings (whether outsourced or in-sourced) that other nonparty device manufacturers have provided in discovery. *See* Dkt. 61 ("Agreed Protective Order"). Philips also does not say why it chose not to raise concerns about trial-related disclosures in any of the parties' four meet and confers. *See* Mot. at 4-5; *id.*, Exs. 3-4.

Surmodics moved to compel Philips because its information is too important to Surmodics' defenses regarding Plaintiffs' alleged relevant product market. By dragging its feet, Philips has prejudiced Surmodics' ability to obtain this critical information. Philips is a sophisticated company

2

with sophisticated counsel. It had more than sufficient time and process to discuss its concerns with Surmodics during the parties' negotiations. As Philips says, a trial looms. The Court should grant the Motion and reject Philips' belated attempts to substantiate objections and concerns that it declined to provide to Surmodics outside of motion practice.

## ARGUMENT

I. **PHILIPS' BURDEN OBJECTIONS EITHER ARE ADDRESSED BY THE NARROWED REQUESTS OR SHOULD BE OVERRULED.**

Philips asserts, but does not show, an undue burden it would suffer from producing even a single document in response to the narrowed requests. In evaluating nonparty burden arguments, courts engage in a "case-specific inquiry" and look to a range of factors, including (i) whether the requested information is relevant, (ii) whether the requesting party has a substantial need for the information, and (iii) whether it might be obtained from less burdensome sources. *See Gaines v. Chicago Bd. of Educ.,* 2022 WL 1292248, at *2 (N.D. Ill. Apr. 29, 2022); *id.* at *2, n.2 (citing *Little v. JB Pritzker for Governor*, 2020 WL 1939358, at *2 (N.D. Ill. Apr. 22, 2020) (identifying additional factors courts may consider)).

***The narrowed requests are highly relevant.*** Surmodics seeks highly relevant information about aggregated sales revenue and lubricious coatings used by Philips on its various devices, which bears directly on the FTC's alleged market definition. *See* Mot. at 2, 6-7. In Philips' estimation, seeking information about "lubricious coatings," which necessarily includes the "hydrophilic coatings" included in Plaintiffs' alleged product market, renders the narrowed requests overly burdensome. *See* Resp. at 6. But Philips misstates the law on its relevancy point, as Rule 45 enables parties to seek discovery "relevant to any party's claim *or defense*." *See SPS Techs., LLC v. Boeing Co.*, 2019 WL 2409601, at *3 (N.D. Ill. June 7, 2019) (emphasis added). Here, information about Philips' alternative lubricious coatings, if any, would tend to undermine

3

Plaintiffs' proposed product definition. *See* Mot. at 6-7. At a minimum, the Court should order Philips to produce documents relating to the 12 Philips devices Surmodics identified and provided to Philips, *see* Mot., Ex. 3 at 3, as those devices use concern what Philips calls "the relevant scope of documents … specifically pertain[ing] to the hydrophilic coating market," Resp. at 6.[2]

***Philips' information is uniquely valuable.*** Philips points to other device manufacturers who also have company-specific device sales revenue and coating information, but this argument is a non-starter. *See* Resp. at 7. Regarding device revenues, Philips is a major and sophisticated original equipment manufacturer ("OEM") with a broad portfolio of devices. *See* Mot. at 2; *id.*, Ex. 3 at 3. Philips additionally uses *both* outsourced and in-sourced hydrophilic (and other lubricious coatings), which is uniquely valuable to the case issues because Plaintiffs allege that in-sourced lubricious coatings are not reasonable substitutes for outsourced coatings. *See, e.g.*, Dkt. 66, Am. Compl., ¶ 40 ("[M]ost larger OEMs also choose not to invest the time or resources into developing an in-house coating."). Philips' information thus would help address one way in which Plaintiffs' alleged relevant market is deficient, here, by excising product substitutes such as in-sourced coatings like those used by Philips.[3]

Philips also suggests that Surmodics may seek the information sought in the narrowed requests directly from FTC. *See* Resp. at 7. But unless Philips has provided the FTC with all, or any, of the information sought in the narrowed requests, the argument fails, and Surmodics does

---

[2] For the avoidance of doubt, Surmodics does not know whether Philips' device portfolio contains more devices with lubricious coatings beyond the 12 devices reflected in Exhibit 3 to Surmodics' Motion. *See* Mot., Ex. 3 at 3. At a minimum, Surmodics respectfully requests the Court to order Philips to produce materials responsive to at least those 12 devices. *See id.*

[3] *See, e.g.*, Mot. at 4, n.3 (Surmodics sells hydrophilic coatings to Philips for its devices sold under the Spectranetics™ brand); *see also id.*, n.4 (Philips' website states that it uses self-produced, proprietary hydrophilic coatings on some of its devices).

4

not understand either to be true.[4] And the case cited by Philips, *see* Resp. at 7 (citing *Earthy, LLC v. BB&HC*, 2017 WL 4512761, (N.D. Ill. Oct. 10, 2017)), is irrelevant. There, the court granted a nonparty's motion to quash because the subpoenaing party could obtain the same discovery "using less intrusive means, such as direct discovery" from a litigating party. *Id.* at *3. In contrast, Philips' information is in its sole possession, custody, and control, and Surmodics' narrowed requests are therefore proper.

***Philips has not carried its burden in showing the requests are improper.*** Philips ran searches in its databases using terms such as "coatings," "alternatives," and "lubricious coatings." Resp. at 8. Philips assets that because these generalized search terms "resulted in an exceptionally large amount of search results," it has sufficiently demonstrated its burden. *See* Resp. at 8 (citing Harper Decl. ¶¶ 13-14). This position is groundless. Philips' investigation completely ignored the numerous pieces of information provided by Surmodics during the parties' negotiations, including the device list, even though Philips represented that receiving such information was critical to inform its investigation. *See* Mot., Ex. 3. Surmodics, in good faith, took Philips at its word and believed that Philips would promptly gather sufficient-to-show materials responsive to Surmodics' priority requests based on such information. *See, e.g.*, Mot. at 1, 4-5; *see also id.*, Ex. 1 at 2 ("Surmodics … will strive to minimize the burden and expense of compliance by the third parties within the accelerated timetable set by the court for fact discovery. Accordingly, once you have had an opportunity to review the requests for data and documents, we invite you to speak with us to discuss ways in which the subpoena might be clarified or potentially modified.").[5]

---

[4] If Surmodics is mistaken, and Philips has provided information to the FTC in connection with this action, The Court should order Philips to immediately produce the same information to Surmodics.

[5] Philips, for instance, could have ran specific terms relating to specific lubricious coatings that Surmodics provided in written correspondence, *see, e.g.*, Mot., Ex. 1 at 12 (RFP No. 2) (seeking lubricious coating information used on Philips' devices, "e.g., hydrophilic, hydrophobic, PTFE, parylene, silicone oil"), and

5

Surmodics does not know why Philips asked Surmodics for iterative details about the requests made during the parties' negotiations. Regardless, Philips' failure to use such information in its investigation negates its burden arguments entirely.

***The narrowed requests are sufficiently particular.*** Philips also raises a series of confusing arguments about the purported overbreadth of the narrowed requests. *See* Resp. at 6-9. For example, Philips argues that "'[l]ubricious coatings' is a generic term that could entail many different chemical compounds, and the term 'alternative coatings' is even more generic and entails a broader category of chemical compounds." Resp. at 7 (citing Harper Decl. ¶ 13). But Philips' arguments again lack merit by failing to explain why it ignored the information it requested from Surmodics about the narrowed requests in its investigation. *See* Mot., Ex. 3 at 3, 6.

Similarly, Ms. Harper states in her declaration that a Senior R&D Manager for Philips, Weston Lee, "dedicated two full workdays to investigate whether reports existed for 'lubricous coatings,' which [in-house counsel] understood Surmodics requested as part of its 'narrowed' subpoena requests." Harper Decl. ¶ 4. But Ms. Harper met with Mr. Lee on May 19, *id.* ¶ 3, and Surmodics' counsel provided the list of Philips' devices to Philips' counsel on May 15, *see* Mot., Ex. 3 at 3. Philips' self-serving statements about its search efforts necessarily fail because they rest on a false assumption, specifically that asking employees about where to find general "lubricious coatings" information constituted a reasonable inquiry despite having far more specific

---

*id.*, Ex. 3 at 6 (regarding Philips' hydrophilic testing for its devices: "Philips' consideration of which lubricious coating to use … e.g., hydrophilic vs. hydrophobic vs. PTFE vs. silicone vs. parylene vs. substrate/no substrate"). That Philips ignored Surmodics' explanations and details in favor of using terms like "lubricious" and "alternative" to prove up its burden is therefore irrelevant and fails to demonstrate the narrowed requests are improper.

information in hand, *including the list of Philips' specific devices that were responsive to the narrowed requests*.[6]

Philips' further contentions that it does not compile higher-level device and product revenue, or lubricious coating purchase data, similarly lack credulity. Resp. at 10 (citing Harper Decl. ¶¶ 10, 13-15). Philips is a global device manufacturer with employees and systems dedicated to managing its business units and supply chains. *See* Mot. at 2; Harper Decl., ¶¶ 3, 14. Surmodics does not have visibility into Philips' IT systems or software; it notes only that multiple other device manufacturers have provided this same information. Philips also makes no claim that it is "financially incapable of producing the responsive documents," *Bankers Life & Casualty Co. v. Alshoubaki*, 2016 WL 11940391, at *9 (N.D. Ill. June 27, 2016), and has not demonstrated its "resources or the burden or expense of compliance outweighs the clearly relevant nature of the requested information." *Id.*[7]

The Court should grant Surmodics' Motion and order Philips to promptly produce documents responsive to the narrowed requests.

---

[6] Philips' disregard for such information also demonstrates why its suggestion that the parties engage in further meet and confers would be an exercise in futility.

[7] Philips takes issue with Surmodics' reference to *Alshoubaki* and the court's order compelling a nonparty to produce documents responsive to a party's narrowed requests based on Rule 26's proportionality factors, which include an evaluation of the relevancy of the information sought. *Compare* Mot. at 7, 10, *with* Resp. at 9-10. If Philips' position is that Surmodics' narrowed requests are not relevant *enough*, Philips is simply incorrect. And *Alshoubaki* further demonstrates that Surmodics' narrowed requests negate Philips' attempted burden demonstration because that demonstration implies large-scale collections and searches are required, even though Surmodics tailored the narrowed requests expressly to relieve Philips of any such effort.

***The time period of the narrowed requests is reasonable.*** Finally, and for the avoidance of doubt, the time period for each of the Narrowed Requests is "January 1, 2021, through the present."[8]

## II. THE PROTECTIVE ORDER ADDRESSES PHILIPS' CONFIDENTIALITY AND COMPETITOR CONCERNS.

The Court should reject Philips' arguments about the purported insufficiency of the Agreed Protective Order in light of its confidentiality concerns and competitor status.

*First*, Philips contends that "[d]isclosure of at least some of the information sought by the Surmodics subpoena would violate the terms of various non-disclosure agreements that Philips has with its suppliers." *See* Resp. at 11; Harper Decl. ¶ 12. But Philips does not explain whether this concern applies to the original subpoena or the narrowed requests, or if the latter, how the narrowed requests regarding *Philips*' device revenue and *Philips*' in-sourced lubricious coatings implicate any such concern. The Court should thus reject this argument as to the narrowed requests relating to "Device product/revenue" and "In-sourced lubricious coatings." *See* Mot. at 2-3.

For the narrowed requests regarding "Outsourced lubricious coatings" and "Evaluating of lubricious coatings alternatives," Philips' under-developed arguments about its confidentiality concerns and competitor status are "not a sufficient reason to altogether prohibit the disclosure of relevant material." *See In re Delta Dental Antitrust Litig.*, 2023 WL 8043400, at *5 (N.D. Ill. July 18, 2023) (granting, in part, motion to compel nonparty compliance with two Requests "as narrowed during the meet-and-confer process.") (cleaned up); *see also Amer. Needle Inc.*, 2012 WL 4327610, at *3 (ordering nonparty to produce confidential contract, in part because consent

---

[8] Philips falsely asserts that narrowed request Nos. 2-4 are "unlimited" in time. The time periods underlying the original Subpoena requests are all either January 1, 2021, or, in select instances, January 1, 2020. *See* Mot. Ex. 1, at 10-23.

8

of other party to the contract "is not necessary for disclosure in litigation."). Philips could have raised these issues during the parties' four meet and confers, and courts are "not inclined to allow [non-parties] to avoid enforcement of [a] subpoena with a backdoor attempt to impose a privilege" absent a sufficient burden showing. *See Thayer v. Chiczewski*, 257 F.R.D. 466, 470 (N.D. Ill. 2009) (rejecting nonparty's argument conflating undue burden with work product privilege). Philips has made none.

*Second*, Philips argues that the narrowed requests "expressly seek confidential proprietary information from Philips, which is highly burdensome considering that Surmodics is a direct competitor of Philips in the peripheral interventional device market." Resp. at 11. Elsewhere, Philips claims that it will suffer economic harm if required to produce sufficient-to-show documents tied to the narrowed requests because it currently sells one medical device that competes with a Surmodics medical device and may have more competing devices in the future. Harper Decl., ¶¶ 7-8, 11. Respectfully, the stringent protections afforded by the Agreed Protective Order sufficiently address any of Philips' competitor-related concerns. Significantly, Surmodics does not seek confidential research and development documents for Philips' devices themselves, *see* Mot. at 2-3. Nor does Philips reconcile its positions with Rule 26's proportionality factors and attempt to show why they outweigh the highly relevant and uniquely valuable information in its possession. *See* Mot. at 9-10.[9]

---

[9] Surmodics' Motion incorrectly described one of the parties in *Meridian Lab'ys, Inc. v. OncoGenerix USA, Inc.*, 2021 WL 4768256, at *4 (N.D. Ill. Jan. 6, 2021), as a "third party" rather than a "party." *See* Mot. at 9. Surmodics apologies for this mistake. Additionally, Surmodics notes that a nonparty's status does not alter *how* courts evaluate objections to case protective orders, which includes determining whether the protective order adequately safeguards confidential information produced by parties and nonparties in a particular litigation. *See, e.g.*, *In re Dealer Mgmt. Sys. Antitrust Litig.*, 2018 WL 6413199, at *3 (N.D. Ill. Dec. 6, 2018) (finding that a party's request for relevant information is proper, that [the nonparty] has not carried its burden to show that [the] request is improper, and that [the nonparty] has not shown the protections contained in the Confidentiality Order are inadequate to protect [the nonparty's interests].");

9

As for any potential public disclosures at trial, the Agreed Protective Order requires Surmodics to provide Philips notice if *any* of its Confidential Material will be used in court; Philips may additionally move the Court for an order granting *in camera* treatment and allowing Philips to redact Confidential Material before it is publicly filed. *See* Agreed Protective Order, ¶ 11.[10] Surmodics stands ready to discuss these concerns with Philips if they materialize.

"Federal litigation invariably involves discovery of some sensitive information, and protective orders are used to protect [sic] confidential commercial information." *Amer Needle Inc.*, 2012 WL 4327610, at *3 (citation omitted). Philips' reliance on *Trading Techs. Int'l Inc. v. eSpeed, Inc.*, 2006 WL 3541933, at *2 (N.D. Ill. Dec. 5, 2006) is distinguishable because in Philips' own words, the "relevance of the information [in that case] was too tangential…" Resp. at 12-13. But as explained above and in its Motion, Surmodics "has demonstrated the importance" of Philips' information "to the market definition," and Philips has failed to prove its asserted undue burden. *See Amer Needle Inc.*, 2012 WL 4327610, at *3. In the final analysis: "confidentiality is not a sufficient reason to altogether prohibit the disclosure of relevant material[.]" *Id.*

## CONCLUSION

Surmodics respectfully requests that the Court grant its Motion.

---

*Methodist Health Servs. Corp. v. OSF Healthcare Sys.*, 2014 WL 5465401, at *2 (N.D. Ill. Oct. 27, 2014) (same).

[10] The Protective Order also requires the parties to file *in camera* any pleading, motion, exhibit, or other paper filed with the court containing Confidential Material. *See* Agreed Protective Order, ¶ 10.

Dated: June 27, 2025

/s/ Joshua P. Mahoney
Joshua P. Mahoney
FAEGRE DRINKER BIDDLE & REATH LLP
320 South Canal Street, Suite 3300
Chicago, IL 60606
Tel: (312) 212-6520
josh.mahoney@faegredrinker.com

Paul H. Saint-Antoine (*pro hac vice*)
Joanne C. Lewers (*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Ste. 2000
Philadelphia, PA 19103
Tel: (215) 988-2990
Tel: (215) 988-2712
paul.saint-antoine@faegredrinker.com
joanne.lewers@faegredrinker.com

Jonathan H. Todt
Matthew R. Lechner (*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
1500 K Street, NW, Suite 1100
Washington, D.C. 20005
Tel: (202) 230-5832
Tel: (202) 230-5222
jonathan.todt@faegredrinker.com
matthew.lechner@faegredrinker.com

Anna Sallstrom (*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 S. 7th Street
Tel: (612) 766-7000
anna.sallstrom@faegredrinker.com
Minneapolis, Minnesota 55402

*Counsel for Defendant Surmodics, Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 27, 2025, I electronically filed a true and correct copy of the foregoing document using the United States District Court for the Northern District of Illinois' CM/ECF System, which will send a notice of electronic filing to all counsel of record.

*/s/ Josh Mahoney*