IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, STATE OF ILLINOIS, and STATE OF MINNESOTA | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 25-cv-2391 |
| v. | ) ) ) | Judge Jeffrey I. Cummings |
| GTCR, LLC, GTCR BC HOLDINGS, LLC, and SURMODICS, INC. | ) ) ) ) | |
| Defendants. | ) | |

## ORDER

Plaintiffs Federal Trade Commission, State of Illinois, and State of Minnesota bring this case against defendants GTCR, LLC, GCTR BC Holdings, LLC ("BC Holdings"), and Surmodics, Inc. ("Surmodics"), seeking to enjoin a proposed merger between BC Holdings and Surmodics which, plaintiffs allege, "would result in a combined company that controls over 50 percent of the market for outsourced hydrophilic coatings." (Dckt. #66 at ¶1).

Before the Court is BC Holdings' motion to compel Salesforce data from non-party Harland Medical Systems, Inc. ("Harland") about Harland's coating sales opportunities. Harland, plaintiffs allege, is the "third largest player" in the hydrophilic coating market. (*Id.* ¶52). For the reasons set forth before, BC Holdings' motion, (Dckt. #169), is denied.

### I.    LEGAL STANDARD

Federal Rule of Civil Procedure 45 permits a party to issue a subpoena directing a non-party to "produce designated documents, electronically stored information, or tangible things in that person's possession." Fed.R.Civ.P. 45(a)(1)(A)(iii). The ability to use subpoenas to obtain information from non-parties is not unlimited, however; Rule 45 provides that the issuer of "a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed.R.Civ.P. 45(d)(1). Rule 45 also instructs courts that they "must protect" non-parties "from significant expense resulting from compliance" with a subpoena. Fed.R.Civ.P. 45(d)(2)(B)(i)&(ii).

Consequently, "the court should be particularly sensitive when weighing the probative value of the information sought against the burden of production on the non-party." *Martin v. United States*, No. 13-CV-3130, 2015 WL 7783516, at *2 (C.D.Ill. Dec. 3, 2015) (cleaned up). Indeed, "[i]n keeping with the text and purpose of Rule 45(c)(3)(A), it has been consistently held

that 'non-party status' is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue." *United States ex rel. Tyson v. Amerigroup Illinois, Inc.*, No. 02-C-6074, 2005 WL 3111972, at *4 (N.D.Ill. Oct. 21, 2005); *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D. 181, 188 (N.D.Ill. 2013) (same). "Non-parties are afforded this consideration because they have a different set of expectations than parties. . . . While parties to a lawsuit must accept the invasive nature of discovery, non-parties experience an unwanted burden." *HTG Capital Partners, LLC v. Doe(s)*, No. 15-C-2129, 2015 WL 5611333, at *3 (N.D.Ill. Sept. 22, 2015) (cleaned up).

In addition to the non-party status of the subpoenaed entity, courts consider a number of other factors when determining if the burden imposed by a subpoena is "undue." These factors include whether: (1) the information requested is relevant; (2) the party requesting the information has a substantial need for the documents; (3) the document request is overly broad; (4) the time period the request covers is reasonable; (5) the request is sufficiently particular; and (6) whether compliance with the request would, in fact, impose a burden on the subpoenaed party. *Am. Soc. of Media Photographers, Inc. v. Google, Inc.*, No. 13 C 408, 2013 WL 1883204, at *2 (N.D.Ill. May 6, 2013) (citing to *Northwestern Memorial Hospital v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004)).

## II.  DISCUSSION

BC Holdings seeks to compel the production of Harland's Salesforce sales opportunity data—or in other words, "the data that Harland maintains about coating sales opportunities." (Dckt. #169 at 1). According to BC Holdings, it is entitled to Harland's sales opportunity data to show "the success of Harland's lubricious coatings business and its availability as an alternative supplier of lubricious coatings." (Dckt. #169). In resisting BC Holdings' request, Harland explains that it previously provided documents and information to BC Holdings sufficient to show Harland's status as a hydrophilic coating supplier and the relative success of its business, including: (1) sales data, broken down by year, original equipment manufacturer, and business line dating back to 2019; (2) coating services revenue by customer and device for 2023 and 2024; and—perhaps most relevant here—(3) pipeline opportunity revenue estimates by customer for 2024 to 2027. Harland argues that the remaining data that BC Holdings seeks—namely, Salesforce sales opportunity data for 2021 to 2023—is "largely irrelevant" and would be unduly burdensome to produce. The Court agrees.

BC Holdings argues that the sales opportunity data depicts "Harland's competitive presence and impact in the market" and is therefore relevant to testing plaintiffs' allegations that the proposed merger would have anticompetitive effects. Harland, for its part, argues that BC Holdings is already in possession of the data that best represents the success of its lubricious coating business—namely, its 2024 to 2027 opportunity revenue estimates—and that any sales opportunity data from 2021 to 2023 is "largely irrelevant" because it relates to either: (1) opportunities that Harland is no longer pursuing; or (2) projects for which the client's medical device has already moved out of development (i.e., received approval from the Food and Drug Administration), and therefore, the ongoing revenue for these projects appears in Harland's financial information previously provided to BC Holdings.

The Court agrees with Harland that any additional sales opportunity data from 2021 to 2023 that is not related to projects that Harland ultimately pursued is irrelevant to the claims and defenses in this case. As BC Holdings itself put it, it is seeking data sufficient to show the *success* of Harland's business, and BC Holdings has not sufficiently articulated how *opportunity* data, which may never materialize into work or revenue for Harland is relevant to Harland's success. *See Little v. JB Pritzker for Governor*, No. 18 C 6954, 2020 WL 1939358, at *5–6 (N.D.Ill. Apr. 22, 2020) (denying motion to compel where the party seeking documents from a non-party failed to explain how the requested documents were relevant to the complaint).

But even presuming that this additional sales opportunity data has some relevance, BC Holdings has not shown how the incremental value of that information outweighs the burden on Harland to produce it. To the contrary, BC Holdings has already received a substantial amount of information in response to its subpoena to Harland, including opportunity revenue estimates by customer for 2024 to 2027, the deposition of a corporate witness from Harland, and historic revenue numbers. Harland also points out, and BC Holdings does not dispute, that BC Holdings has attempted to obtain sales opportunity information from "at least tens" of the medical device manufacturers themselves. (Dckt. #182 at 10 fn. 1). BC Holdings does not sufficiently explain what the additional opportunity data would add or why the significant volume of data already produced by Harland is insufficient to show the "success of Harland's lubricious coatings business." *In re Bextra & Celebrex Mktg. Sales Pracs. & Prod. Liab. Litig.*, No. 08 C 402, 2008 WL 4345158, at *2 (N.D.Ill. Mar. 14, 2008) (denying motion to compel documents regarding the peer review process where the public articles would satisfy the requests and the party seeking the documents failed to explain what the peer review comments would add). Nor does BC Holdings explain whether its attempts to obtain this sort of information from other third-parties was successful.

The Court also takes into consideration Harland's representation that it has already spent over $50,000 in attorney's fees in its efforts to comply with the subpoena. Moreover, Harland estimates that it would "take over 1,000 man hours to review the Salesforce data, ascertain Harland's notice obligations, confer with customers, and produce the requested material." (Dckt. #182 at 13). This would represent a substantial burden on a third-party. Finally, while the Court presumes that the protective order in place in this case could protect the requested sales opportunity information, there is still a risk to Harland with respect to its production and that risk is not outweighed by the very limited incremental probative value of the sales opportunity data at issue. *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 138 F.R.D. 530, 538 (C.D.Ill. 1991) ("There is a constant danger inherent in disclosure of confidential information pursuant to a protective order.") (cleaned up).

In sum: the Court finds that the Salesforce opportunity data in question from 2021 to 2023 is irrelevant and the incremental probative value of this additional data in is far outweighed by the burden that would be imposed on third-party Harland to comply with the subpoena.

## CONCLUSION

For the reasons set forth above, the Court, in its discretion, denies the Opposed Motion of GTCR BC Holdings, LLC to Compel Harland Medical Systems, Inc. to Comply with Subpoena, (Dckt. #169).


**DATE:  July 29, 2025**

_____
**Jeffrey I. Cummings**
**United States District Court Judge**