UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** **STATE OF ILLINOIS,** and **STATE OF MINNESOTA,** *Plaintiffs,* v. **GTCR, LLC,** **GTCR BC HOLDINGS, LLC,** and **SURMODICS, INC.,** *Defendants*. | Case No. 1:25-cv-02391 Hon. Jeffrey I. Cummings |

### OPPOSED MOTION BY PLAINTIFFS TO COMPEL WITHHELD DOCUMENTS RELATING TO DEFENDANTS' PROPOSED DIVESTITURE

Plaintiffs Federal Trade Commission ("FTC") and the States of Illinois and Minnesota respectfully move the Court to compel discovery from Defendants GTCR, LLC and GTCR BC Holdings, LLC (together, "GTCR") regarding one of the key issues in this litigation: the structure of Defendants' proposed divestiture of a limited amount of Biocoat assets to ▮ ("Proposed Divestiture").[1] As described to the Court during the July 25 hearing, Defendants recently proposed to Plaintiffs that they can purportedly remedy the substantial lessening of competition that GTCR's proposed acquisition of Surmodics ("Proposed Acquisition") would

---

[1] Pursuant to Local Rule 37.2, Plaintiffs have met and conferred with Defendants GTCR and Surmodics, Inc. (collectively, "Defendants"). Defendants oppose the relief sought herein.

cause with a partial divestiture of Biocoat's assets. Defendants have further claimed that they can ███████████████████████████████████████████████████████████████████████████████

But, at the same time, GTCR has hamstrung Plaintiffs' efforts to evaluate the Proposed Divestiture by impermissibly withholding documents under the guise of privilege and instructing key GTCR witnesses not to answer certain questions related to the Proposed Divestiture. In particular, GTCR has shielded from discovery ████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████ This work was conducted by GTCR and Biocoat businesspeople and Defendants have failed to substantiate their claims that any of this work is protected from disclosure by attorney-client or work product privilege.

GTCR has refused to produce these documents while at the same time proffering the alleged conclusion of that work—███████████████████████████████████. GTCR has also disclosed ██████████████████████████ that they contend support their claim that the Proposed Divestiture will remedy the anticompetitive effects of the Proposed Acquisition. In disclosing their hand-picked conclusions, evidence, and testimony while barring Plaintiffs from obtaining contradicting proof, GTCR has impermissibly sought to wield privilege as both a sword and a shield, necessitating the Court's intervention. Plaintiffs therefore request that the Court compel production of the disputed documents, or, in the alternative, preclude Defendants from asserting in any way that ███████████████████████████████████████████.

The Parties have agreed to the following briefing schedule: a deadline of August 6, 2025, for Defendants' opposition and a deadline of August 8, 2025, for Plaintiffs' reply.

2

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

GTCR's approximately $627 million acquisition of Surmodics—if allowed to close—would combine the two largest providers of outsourced hydrophilic coatings. Redacted Amended Complaint ¶¶ 5, 25, Dkt. 66. The combined company would control more than ▮ percent of the outsourced hydrophilic coatings market in the United States, well above the threshold needed to establish that a proposed transaction is unlawful. *Id.* ¶ 6. Over the course of fact discovery, deposition testimony from party and third-party witnesses, as well as their custodial documents, have further confirmed this strong presumption of illegality.

After the Complaint was filed, in March 2025, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Over the course of the next two months, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ During discovery, GTCR sought to justify the limitations in this partial Proposed Divestiture in part by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

3

███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
████████████████████████

Despite receiving piecemeal information about the Proposed Divestiture—much of it sent after the close of fact discovery—Plaintiffs have diligently sought discovery that would enable a full and fair assessment of Defendants' proposal. To aid in that assessment, Plaintiffs have sought



---

[2] Ex. A (Letter from H. Waller (Latham & Watkins) to M. McKinley (FTC) (July 31, 2025) at 3).
[3] *See id.* at 1.

4





Following the deposition, on July 2, Plaintiffs requested all versions of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

After Plaintiffs followed up on this request,[6] GTCR refused to produce the requested documents, asserting that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[5] Ex. B (Email from J. Danziger (FTC) to I. Connor (Latham & Watkins) (July 2, 2025)).
[6] Ex. B (Email from J. Danziger (FTC) to I. Connor (Latham & Watkins) (July 7, 2025)).
[7] Ex. B (Email from I. Connor (Latham & Watkins) to J. Danziger (FTC) (July 7, 2025).

BC Holdings' privilege log currently includes ▮ entries related to the divestiture that Plaintiffs believe include the ▮ sought. *See* Ex. C. While Plaintiffs do not seek the production of all ▮ entries, at least ▮ entries appear from their description to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

After receiving BC Holdings' privilege log, Plaintiffs challenged GTCR's continued withholding of the ▮▮▮▮▮▮▮▮▮▮.[8] Plaintiffs provided the basis for production of the shielded materials in multiple emails and during a meet and confer with Defendants on July 30, explaining that Plaintiffs seek discovery of the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, not the legal guidance or communications containing any legal advice provided by counsel regarding the ▮▮▮▮▮▮.[9] GTCR maintains that those documents are privileged.[10]

On July 24, more than two weeks after the close of fact discovery and less than a month before the Preliminary Injunction Hearing, Defendants finally sent Plaintiffs their purportedly finalized agreement with ▮▮▮. On July 30, Defendants sent Plaintiffs a set of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, which contained changes from the agreements sent to Plaintiffs the week before. Under the terms of this agreement, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Nonetheless, GTCR continues to refuse to produce any of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

---

[8] Ex. B (Email from L. Verbeck (FTC) to I. Connor (Latham & Watkins) (July 21, 2025)).
[9] Ex. B (Email from L. Verbeck (FTC) to I. Conner (Latham & Watkins) (July 21, 2025)).
[10] Ex. A (Letter from H. Waller (Latham & Watkins) to M. McKinley (FTC) (July 31, 2025)); Ex. B (Email from S. Candelaria (Latham & Watkins) to L. Verbeck and J. Danziger (FTC) (July 24, 2025)).

7

**ARGUMENT**

**I.    GTCR HAS NOT DEMONSTRATED THAT THE CHALLENGED DOCUMENTS AND TESTIMONY ARE ACTUALLY PRIVILEGED**

    **A.    GTCR Has Not Demonstrated That The Challenged Documents Are Protected By Attorney-Client Privilege**

The party seeking to invoke attorney-client privilege bears the burden of proving all of its essential elements. *United States v. White*, 950 F.2d 426, 430 (7th Cir. 1991). The Seventh Circuit applies the general principles of attorney-client privilege as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997) (citing 8 John Henry Wigmore, Evidence in Trials at Common Law § 2292 (John T. McNaughton rev. 1961)).

The attorney-client privilege is not a valid basis on which to withhold the documents at issue because Plaintiffs seek only ▇▇▇▇ prepared by non-lawyers, not privileged attorney client communications. GTCR's privilege log contains ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. However, GTCR has not provided any information to suggest that these ▇▇▇ created by non-lawyers, contain any privileged communications between clients and attorneys. Indeed, many of these entries do not list any attorney in the columns titled "Author/Sender," "Email Recipients," "Email Carbon Copy Recipients," or "Email Blind Copy" despite GTCR's claims of attorney-client privilege over them. *See* Ex. C. Instead, under the column "Additional Counsel," the privilege log lists the law firms of Cleary Gottlieb LLP, Kirkland & Ellis LLP, and Latham & Watkins LLP. This is insufficient to prove the existence of attorney client privilege. *See* FED. R. CIV. P. 26(b)(5)(A)(i); *see also In re: Fluidmaster*, 2016 WL 6599947, at *12 (N.D. Ill. Nov. 8, 2016) (concluding that

the party asserting attorney-client privilege with respect to three documents had not made the required preliminary showing as their privilege log entries did not list any attorney in the four traditional columns ("To," "From," "CC," or "BCC")). Nor has GTCR provided any support for their claim that these ▇▇▇▇▇ include "communications among non-lawyers [that] reveal the substance of attorney-client communications with outside counsel."[11]

GTCR also argues that "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇"[12] But this does not mean that the ▇▇▇▇▇ created by non-lawyers are privileged attorney-client communications. As the Supreme Court has held, attorney-client privilege "extends only to communications and not to facts." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) (emphasis in original). GTCR cannot claim the underlying ▇▇▇▇▇ created by non-lawyers are privileged simply because they may have been subsequently communicated to counsel. *Towne Place Condo. Ass'n v. Phila. Indem. Ins. Co.*, 284 F. Supp. 3d 889, 895 (N.D. Ill. 2018) ("Merely communicating with a lawyer or copying a lawyer on an otherwise non-privileged communication, will not transform the non-privileged communication or attachment into a privileged one, even if the otherwise non-privileged communication was at the behest of the lawyer"). Since these ▇▇▇▇▇ are not attorney-client privileged communications, attorney-client privilege should not apply.

---

[11] Ex. B (Email from S. Candelaria (Latham & Watkins) to L. Verbeck and J. Danziger (FTC) (July 24, 2025)).
[12] *Id.*

9

B.  **GTCR Has Not Demonstrated That The Challenged Documents Are Attorney-Work Product**

GTCR also has not proven that the ▮▮▮▮▮▮▮▮ conducted by non-attorney employees of GTCR are properly considered to be protected attorney work product. The federal work-product doctrine "protects *all* 'documents and tangible things that are prepared in anticipation of litigation'" by or for a party or its agent for the purpose of analyzing or preparing the party's case. *Appleton Papers, Inc. v. EPA*, 702 F.3d 1018, 1024 (7th Cir. 2012) (quoting FED. R. CIV. P. 26(b)(3)(A)). However, the work product doctrine provides different degrees of protection for "fact" and "opinion" work product. *Id.* at 1025. While opinion work product "comprises the mental impressions, conclusions, opinions, or legal theories of an attorney or a party's representative," fact work product consists only of "factual material." *Fluidmaster*, 2016 WL 6599947 at *3 (internal citations omitted). Even if counsel directed the client to create a particular analysis, the factual material does not become opinion work product. *FTC v. Boehringer Ingelheim Pharms., Inc.* ("*Boehringer II*"), 180 F. Supp. 3d 1, 25 (D.D.C. 2016) ("broad-ranging factual analysis of many possible litigation and settlement outcomes" that was "created at [counsel's] behest and analyze variables she identified," were not opinion work product).

Factual information may not be withheld under the work product doctrine. *Allen v. Chicago Transit Authority*, 198 F.R.D. 495, 500 (N.D. Ill. 2001). For example, in *Vardon Golf Co. v. Karsten Mfg. Corp.*, the court found that while a party was not required to disclose a legal memorandum, it was obligated to disclose its awareness of a key fact contained in the legal memorandum. 213 F.R.D. 528, 534 (N.D. Ill. 2003). Fact work product can be discoverable when a party demonstrates that they have a substantial need for the materials and that it would be exceedingly difficult to obtain the information through other means. *Id.* (citing *Appleton Papers*,

10

702 F.3d at 1022-23). Here, Plaintiffs are merely asking for the disclosure of fact work product, that is, the ███████████████████████████████████████████████ ███████████████████████████████████████. Plaintiffs are not seeking opinion work product of any nature, including any mental impressions, conclusions, opinion, or legal theories of GTCR's attorneys. Plaintiffs also have a substantial need for the withheld materials: these issues are core to Defendants' Proposed Divestiture defense and Plaintiffs must be given the opportunity to examine the viability and competitive strength of the package by ██████ ███████████████████████████████████████. In assessing a divestiture's adequacy courts routinely consider the scope of the proposed divestiture and have found that a divestiture should generally encompass an entire standalone business or product line, rather than pieces of a business that may not succeed without the whole. *See Fed. Trade Comm'n v. Kroger Co.*, No. 3:24-CV-00347-AN, 2024 WL 5053016, at *26 (D. Or. Dec. 10, 2024) (rejecting divestiture that contemplated a "mix" of assets and did "not represent a standalone, fully functioning company"); *Fed. Trade Comm'n v. Sysco Corp.*, 113 F. Supp. 3d 1, 76 (D.D.C. 2015) (considering "disadvantages" the divestiture buyer would face from having fewer than half the salespeople of the existing business); *see also id.* at 74 (considering whether facilities included in proposed divestiture would enable buyer to compete with the merged firm).

Additionally, Plaintiffs are unable to obtain the information through other means, as the ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████. GTCR claims that, by providing ██████████████ related to the Proposed Divestiture and ██████████ ███████████████████████████████████████████████, they have provided all the information needed to evaluate the Proposed Divestiture. However, Defendants'

11

selective disclosure of information does not include a cornerstone of the analysis – the ▮▮▮▮▮▮▮▮▮▮▮▮ – and prejudices the Court's ability to thoroughly examine the Proposed Divestiture. Plaintiffs are not in a position to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, as Plaintiffs explained to Defendants during the July 30 call, since the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

## II. DEFENDANTS HAVE WAIVED ANY PRIVILEGE UNDER THE "SWORD AND SHIELD" DOCTRINE BY SELECTIVELY WAIVING PRIVILEGE TO AID IN THEIR DEFENSE

The attorney-client privilege is generally waived when a litigant asserts claims or defenses that put privileged information at issue in litigation. *See Garcia v. Zenith Electronics Corp.*, 58 F. 3d 1171, 1175 n.1 (7th Cir. 1995)) (noting that attorney-client privilege would not have applied where the plaintiff's case was premised upon the fact that the advice and representation provided by his attorney was inadequate). In other words, "the attorney-client privilege cannot at once be used as a shield and a sword." *Motorola Sols., Inc. v. Hytera Commc'ns Corp.* No. 17 C 1973, 2018 WL 1804350, at *5 (N.D. Ill. Apr. 17, 2018) (quoting *Willy v. Administrative Review Bd.*, 423 F.3d 483, 497 (5th Cir. 2005); *see also Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 431 F. Supp. 2d 834, 839 (N.D. Ill. 2006). Under the sword/shield doctrine, a party "cannot assert the attorney/client privilege to keep an opponent from discovering facts about an investigation when the investigation is to be used at trial as a defense to defeat the opponent's allegations." *Fultz v. Fed. Sign*, No. 94 C 1931, 1995 WL 76874, at *2 (N.D. Ill. Feb. 17, 1995) (finding that privilege was waived when the defense refused to stipulate that an investigation and the results thereof would not be used as part of their defense at trial).

In *Reitz v. City of Mt. Juliet*, for example, the defendant waived its privilege and work-product protection by making "tactical use" of an internal investigation created by an attorney hired by the defendant while withholding the underlying materials, thereby preventing the

plaintiff from investigating the reasonableness of the final report. 680 F. Supp. 2d 888, 894 (M.D. Tenn. 2010). Similarly, in *Motorola* the court found that a litigant waives privilege when advancing a defense reliant upon materials which the other party must access to "effectively contest or impeach the claim." 2018 WL 1804350, at *7. The court in *Motorola* found that parties waive privilege when they affirmatively put privileged facts or conclusions at issue by relying on them to prove a defense.[13] *Id*. This is precisely what Defendants attempt here, as they have affirmatively inserted a new issue into the case by offering their Proposed Divestiture as a defense and arguing that, based on underlying facts which they shield from scrutiny, ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊

Parties are also barred from "partially disclosing and affirmatively relying upon aspects of privileged" materials – in other words, selectively waiving privilege over documents which they find helpful, while withholding those they do not. *Ahern v. Pac. Gulf Marine, Inc.*, No. 8:06-CV-2068-T-27MSS, 2007 WL 9723901, at *3 (M.D. Fla. Nov. 8, 2007). In *Vardon Golf Co. v. Karsten Mfg. Corp.*, the court found that the partial disclosure of privileged material constituted a waiver of privilege, and granted defendant's motion to compel with respect to the remainder of the communications, explaining that "Courts in this circuit have held that production of some privileged documents waives the privilege as to all documents of the same subject matter." 213 F.R.D. 528, 533 (N.D. Ill. 2003). In *Ahern*, the court also found an affirmative waiver of privilege over an investigative report regarding the circumstances of the plaintiff's injuries where the defendants attempted to cherry-pick the positive conclusions in the report by partially disclosing and relying upon aspects of the underlying document. No. 8:06-CV-

---

[13] Although the *Motorola* court did not find waiver in that case, the court clarified that affirmatively introducing an argument or defense based on privileged materials would have constituted a waiver. *Motorola Sols.*, 2018 WL 1804350, at *5.

2068-T-27MSS, 2007 WL 9723901, at *4. Similarly, in *Nye v. Sage Prods. Inc.*, a court in this district found that plaintiffs had waived privilege over requested documents by partially disclosing materials, and that their waiver consisted a surrender of any purported work product that did not constitute "opinion work product." 98 F.R.D. 452, 454 (N.D. Ill. 1982). "Even if plaintiffs did not disclose any protected attorney work-product, their waiver of privilege still might be held to surrender some of their work-product protection. One goal of waiver is to prevent selective disclosure of attorney materials. This goal could be undermined if parties could waive privilege and still enjoy full work-product protection." *Id. Cf. In re Grand Jury Proc.*, 219 F.3d 175, 182 (2d Cir. 2000) ("a party cannot partially disclose privileged communications … to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party."). That is exactly what Defendants seek to do here. Defendants propose as a remedy a partial divestiture of some of Biocoat's assets. Yet they cherry-pick the divestiture-related documents they want to share with Plaintiffs (███████████████) while withholding other crucial documents (███████████████). While Plaintiffs do not concede that the underlying analysis is privileged, even if it was, GTCR cannot selectively waive privilege as to the ███████████████████████████████████████████.

GTCR has withheld ███████████████████████████████████ ███████—most of which do not include an attorney on the communication—and have also ███████████████████████████████████████████ ███████████████████. Because Defendants' Proposed Divestiture does not consist of a standalone company, ███████████████████████████ ███████████████████████████ and that the current Proposed Divestiture

14

is a model that would effectively restore competition lost as a result of the proposed anticompetitive acquisition. *Cf. Fed. Trade Comm'n v. Kroger Co.*, 2024 WL 5053016, at *24.

As the cases cites above demonstrate, this is a prototypical sword and shield issue, and Defendants should be compelled to produce their impermissibly withheld documents. If Defendants continue to hide behind the shield of privilege, preventing Plaintiffs from testing the evidence underlying their claims, they may not rely upon those claims in their defense. *Tropical Paradise Resorts, LLC v. Rockhill Ins. Co.*, No. 19-20437-CIV, 2020 WL 13880656, at *1-2 (S.D. Fla. Aug. 30, 2020) (finding that the defendant had chosen to "effectively abandon[]" its defense by persisting in its privilege claims and excluding the privileged evidence for that defense). Defendants should not be permitted to assert their eleventh-hour Proposed Divestiture as a sword while simultaneously shielding evidence that would allow Plaintiffs and the Court to properly assess their proposal. If Defendants persist in relying upon the conclusions of their purportedly privileged materials, they have effectively waived any claim of privilege over the relevant underlying evidence. With the Preliminary Injunction Hearing set to begin in less than three weeks, where Defendants intend to rely on their Proposed Divestiture as a defense, the appropriate course is to compel ███████████████████████████████ so that the Plaintiffs and the Court may fully and robustly evaluate the proposed remedy. Short of compelling the withheld documents in their entirely, Plaintiffs request that the Court preclude Defendants from proffering evidence or argument about ███████████████████████

███████████████████████████████.

## CONCLUSION

Plaintiffs respectfully request the Court grant this motion and compel the production of withheld documents related to the Proposed Divestiture.

15

Dated: August 1, 2025											Respectfully submitted,

/s/ Maia Perez
MAIA PEREZ
Lead Counsel
Federal Trade Commission
Bureau of Competition
600 Pennsylvania Avenue, NW
Washington, DC 20580
Tel: (202) 326-3522
Email: mperez@ftc.gov

YAN GAO
R. TYLER SANBORN
EVELYN HOPKINS
DYLAN G. BROWN
WILLIAM M. MACCI
LAUREN GASKIN
ELIZABETH KLINGER
LILIANA P. VARGAS
NICHOLAS WIDNELL
MEGAN MCKINLEY
LILY VERBECK
LEONARDO CHINGCUANCO
JESSICA WEINER

*Counsel for Plaintiff*
*Federal Trade Commission*

LE'ORA TYREE (IL Bar ID 6288669)
Federal Trade Commission
Midwest Regional Office
230 S. Dearborn Street, Room 3030
Chicago, IL 60604
Tel.: (312) 927-7660
Cell: (312) 960-5612
Email: ltyree@ftc.gov
*Local Counsel for Plaintiff*
*Federal Trade Commission*

/s/ John Milligan
JOHN MILLIGAN
Assistant Attorney General
Office of the Illinois Attorney General 115
S. LaSalle Street, Floor 23
Chicago, IL 60603

Tel.: (773) 505-5937
Email: John.Milligan@ilag.gov
*Counsel for Plaintiff State of Illinois*

*/s/ Elizabeth Odette*
ELIZABETH ODETTE
Manager, Assistant Attorney General
Antitrust Division
Email: elizabeth.odette@ag.state.mn.us

*/s/ Zach Biesanz*
ZACH BIESANZ
Senior Enforcement Counsel Antitrust
Division
Email: zach.biesanz@ag.state.mn.us
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
Saint Paul, MN 55101 Tel.: (651) 757-1257
*Counsel for Plaintiff State of Minnesota*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on the 1st day of August, 2025, I filed the foregoing with the Clerk of the Court.

                                                  */s/ Maia Perez*
                                                  Maia Perez
                                                  Attorney for Plaintiff Federal Trade Commission

Pursuant to Local Rule 5.9, I hereby certify that on this 1st day of August 2025, the foregoing was electronically filed using the Court's CM/ECF system and constitutes service to the attorneys of record who have consented to accept service by electronic means and that GTCR, LLC's, GTCR BC Holdings, LLC's, and Surmodics, Inc.'s counsel of record are being served with a copy of this document via electronic mail.

                                                  */s/ Maia Perez*
                                                  Maia Perez
                                                  Attorney for Plaintiff Federal Trade Commission