**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION**, **STATE OF ILLINOIS**, and **STATE OF MINNESOTA**, *Plaintiffs*, v. **GTCR, LLC**, **GTCR BC HOLDINGS, LLC**, and **SURMODICS, INC.**, *Defendants*. | Case No. 1:25-cv-02391 District Judge Jeffrey I. Cummings |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ........................................................................................................1

RELEVANT BACKGROUND ....................................................................................4

ARGUMENT ..............................................................................................................6

I.      BC HOLDINGS IS NOT WITHHOLDING THE CHALLENGED ██████████
        ██████ ON THE BASIS OF THE ATTORNEY-CLIENT PRIVILEGE, AS
        PLAINTIFFS ARGUE............................................................................................6

II.     THE WITHHELD ████████████ IS PROTECTED WORK
        PRODUCT ............................................................................................................6

        A.     There Is No Dispute That The Withheld ████████████ Is Protected
               Work Product .........................................................................................6

        B.     Plaintiffs Have Not Demonstrated, And Cannot Demonstrate, That They
               Have A Substantial Need For BC Holdings' Protected Work Product .................8

III.    BC HOLDINGS HAS NOT WAIVED ANY PRIVILEGE OR WORK
        PRODUCT PROTECTION BY AGREEING TO A DIVESTITURE.............................12

CONCLUSION...........................................................................................................15

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Ahern v. Pac. Gulf Marine, Inc.*,
  2007 WL 9723901 (M.D. Fl. Nov. 8, 2007) .........................................................................14

*Allen v. CTA*,
  198 F.R.D. 495 (N.D. Ill. 2001)..................................................................................7, 8

*Appleton Papers v. EPA*,
  702 F.3d 1018 (7th Cir. 2012) ................................................................. *passim*

*City of Lakeland Emps. Pension Plan v. Baxter Int'l Inc.*,
  2013 WL 2151509 (N.D. Ill. May 16, 2013) ...............................................................7, 12

*Dexia Credit Loc. v. Rogan*,
  231 F.R.D. 268 (N.D. Ill. 2004)...........................................................................12

*FTC v. Arch Coal, Inc.*,
  2004 WL 7389952 (D.D.C. July 7, 2004)............................................................2, 10

*FTC v. Boehringer Ingelheim Pharms., Inc.*,
  180 F. Supp. 3d 1 (D.D.C. 2016) ................................................................................7

*FTC v. Kroger Co.*,
  2024 WL 5053016 (D. Or. Dec. 10, 2024) ...............................................................11

*FTC v. Microsoft Corp.*,
  681 F. Supp. 3d 1069 (N.D. Cal. 2023) ...............................................................1, 10

*FTC v. Sysco Corp.*,
  113 F. Supp. 3d 1 (D.D.C. 2015) ...............................................................................11

*Fultz v. Federal Sign*,
  1995 WL 76874 (N.D. Ill. Feb. 17, 1995) ...............................................................13

*Illumina, Inc. v. FTC*,
  88 F.4th 1059 (5th Cir. 2023) ...............................................................................11

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
  244 F.R.D. 412 (N.D. Ill. 2006).............................................................................13

*Motorola Solutions, Inc. v. Hytera Commc'ns Corp.*,
  2018 WL 1804350 (N.D. Ill. Apr. 17, 2018) ...............................................................13

*Nye v. Sage Prods., Inc.*,
    98 F.R.D. 452 (N.D. Ill. 1982) ............................................................................14

*Peerless Heater Co. v. Mestek, Inc.*,
    1999 WL 35147370 (E.D. Pa. Dec. 6, 1999) ..........................................................9

*Reintz v. City of Mt. Juliet*,
    680 F. Supp. 2d 888 (M.D. Tenn. 2010) ..............................................................13

*Starbucks Corp. v. McKinney*,
    144 S. Ct. 1570 (2024) ............................................................................................1

*Sullivan v. Alcatel-Lucent USA, Inc.*,
    2013 WL 2637936 (N.D. Ill. June 12, 2013) .........................................................7

*Todd v. Societe Bic*,
    1991 WL 93266 (N.D. Ill. May 20, 1991) ..............................................................9

*Trading Techs. International Inc. v. eSpeed, Inc.*,
    431 F. Supp. 2d 834 (N.D. Ill. 2006) ...................................................................13

*Tropical Paradise Resorts, LLC v. Rockhill Ins. Co.*,
    2020 WL 13880656 (S.D. Fla., Aug. 30, 2020) ...................................................15

*Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*,
    2000 WL 1898518 (N.D. Ill. Dec. 20, 2000) .........................................................8

*Trydel Rsch. Pty. Ltd. v. ITW Glob. Tire Repair, Inc.*,
    2024 WL 3950213 (N.D. Ill. Aug. 27, 2024) .......................................................12

*United States v. AT&T, Inc.*,
    916 F.3d 1029 (D.C. Cir. 2019) ..............................................................................1

*United States v. Baker Hughes Inc.*,
    908 F.2d 981 (D.C. Cir. 1990) ................................................................................1

*United States v. Dish Network, LLC*,
    283 F.R.D. 420 (C.D. Ill. 2012) ...........................................................................10

*Vardon Golf Co. v. Karsten Mfg. Corp.*,
    213 F.R.D. 528 (N.D. Ill. 2003) .............................................................................8

*Ventre v. Datronic Rental Corp.*,
    1993 WL 524377 (N.D. Ill. Dec. 13, 1993) ...........................................................9

## STATUTES

15 U.S.C. § 18 ...............................................................................................................1

iii

**RULES**

Fed. R. Civ. P.

26(b)(1) ............................................................................................................................11

26(b)(3) ..............................................................................................................................6

26(b)(3)(A)(ii) ....................................................................................................................8

GTCR, LLC and GTCR BC Holdings, LLC respectfully oppose Plaintiffs' Motion to Compel Withheld Documents Relating to Defendants' Proposed Divestiture (Dkt. 199).

## INTRODUCTION

To prevail on their preliminary injunction motion, Plaintiffs must show that they are likely to succeed in eventually demonstrating that the proposed transaction is likely to substantially lessen competition or tend to create a monopoly. *See* 15 U.S.C. § 18; *Starbucks Corp. v. McKinney*, 144 S. Ct. 1570, 1575 (2024); *United States v. AT&T, Inc.*, 916 F.3d 1029, 1032 (D.C. Cir. 2019); *United States v. Baker Hughes Inc.*, 908 F.2d 981, 991 (D.C. Cir. 1990) (Thomas, J.) ("[T]he ultimate issue" is "whether a transaction is likely to lessen competition substantially."). The transaction at issue is BC Holdings' proposed acquisition of Surmodics *as modified* by the proposed divestiture of a substantial portion of Biocoat's coatings business to ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ (the "Divestiture") upon closing (the "Modified Transaction").[1]

Plaintiffs' motion to compel is a thin privilege dispute designed to sidetrack the Court into exploring whether alternative theoretical divestitures are or could have been feasible. But whether or not alternative structures are or were feasible is irrelevant. The Court will be assessing the actual, signed Divestiture package before it, and not some other, different idea that may have been considered at some point. *See FTC v. Microsoft Corp.*, 681 F. Supp. 3d 1069, 1093 (N.D. Cal. 2023) ("[T]he FTC must address the circumstances surrounding the merger as they actually exist."); *FTC v. Arch Coal, Inc.*, 2004 WL 7389952, *1 (D.D.C. July 7, 2004) (similar); Dkt. 202

---

[1] As explained in Defendants' opposition to Plaintiffs' preliminary injunction motion, the "Divestiture," whose terms are set forth in executed agreements between Biocoat and ▮▮▮▮▮, includes the sale to▮▮▮ of: (1) the entire Biocoat UV-cured coatings business; (2) Biocoat's currently-marketed thermal-cured hydrophilic coatings; (3) a Biocoat facility; (4) the Biocoat® brand; (5) the HYDAK® brand, which Biocoat uses to market thermal and UV coatings; (6) manufacturing equipment; (7) eleven employees across a range of functions; and (8) two other "legacy" thermal-cured coating formulations that ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮. Dkt. 202 at 1, 13-18.

at 13 n.25 (citing cases). Despite the irrelevance of alternative theoretical transactions, Defendants have engaged with Plaintiffs at length to address their questions regarding those alternatives and their feasibility and have provided significant amounts of non-privileged documents and testimony.

This motion concerns a handful of documents that BC Holdings withheld because they are protected work product. There is no real dispute that the withheld ████████ was prepared at the direction of BC Holdings' outside counsel in the context, and because, of this litigation. BC Holdings and ████ agreed to the terms of the Divestiture during the pendency of this litigation, and the Divestiture reflects BC Holdings' attempts to proactively address (and resolve) Plaintiffs' (incorrect) allegations regarding the effects of BC Holdings' acquisition of Surmodics. It is thus no surprise that certain of BC Holdings' ████████ of the Divestiture was directed by outside counsel, who in turn used the analysis to provide legal advice. That analysis, which Plaintiffs seek in their motion, is core attorney work product. None of Plaintiffs' arguments undermine that conclusion.

Even as "fact" work product, BC Holdings' ████████ is protected from disclosure, and Plaintiffs have not met the high threshold that they must meet to show a "substantial need" for it. First, the information is irrelevant. Second, Plaintiffs have the data they need to assess the feasibility of theoretical alternatives to the Divestiture. They have received the underlying ████████ on which BC Holdings' ████ is based, asked numerous questions of BC Holdings' witnesses during depositions ████████ ████████ and received ample other discovery related to the Divestiture.

BC Holdings also has not waived work product protection. Plaintiffs rely on cases regarding voluntary disclosure of attorney-client communications, not work product. As the

Seventh Circuit has explained, subject-matter waiver of attorney-client privileged communications does not apply with the same force to attorney work product. *See Appleton Papers v. EPA*, 702 F.3d 1018, 1024–25 (7th Cir. 2012). And of course it does not: The purpose of creating attorney work product is often to produce a final product that will be disclosed, whether to an agency or a court. In that process, material inevitably hits the cutting room floor without losing its work product protection. Plaintiffs are no more entitled to the divestiture roads not taken than Defendants would be entitled to the expert analysis that Plaintiffs' economist drops from his final report. Defendants also did not put the ███████████████████████ at issue. *See* Dkt. 199 at 13–15. Defendants have never argued, and do not intend to argue, that the FTC or the Court should accept the Modified Transaction because ████████████████████████████████ ████████. During settlement negotiations, the FTC requested information about an alternative divestiture, and in the spirit of cooperation, Defendants answered the FTC's questions, but in doing so did not waive work product protection.

BC Holdings has been transparent and forthcoming with Plaintiffs throughout the Divestiture process by producing extensive discovery on an ongoing basis, and providing Plaintiffs with all non-privileged information and materials that they have requested to allow them to evaluate the Divestiture. And, if the Court believes it necessary and so requests, BC Holdings will submit the challenged documents for *in camera* review so that the Court can confirm that the documents are, indeed, protected work product.[2] Plaintiffs' motion should be denied.

---

[2] The documents Plaintiffs seek to compel in their motion are not the same documents that Plaintiffs raised in their July 21 email and that were discussed during the parties' July 30 meet and confer. *Compare* Dkt. 199 at 7 (citing privilege log entries BCASM_CP044_000003079, BCASM_CP044_000003015, and BCASM_CP044_000003043) *with* Dkt. 199-3 at 10 (requesting production of BCASM_CP044_000002124, BCASM_CP044_000002751, and BCASM_CP044_000002808). Should the Court wish to conduct an *in camera* review, BC Holdings will submit all six documents along with their accompanying parent emails.

## RELEVANT BACKGROUND

Shortly after Plaintiffs filed this lawsuit in early March 2025 seeking a preliminary injunction to prevent BC Holdings' acquisition of Surmodics from closing, BC Holdings began to analyze potential divestiture scenarios at the direction of its outside legal counsel to assess potential paths to resolving Plaintiffs' claims. Decl. of Daniel Culley ¶¶ 3-5 ("Culley Decl."). As the litigation progressed, and BC Holdings began to discuss a potential divestiture package with the FTC, BC Holdings conducted additional ███████████████ at the direction of its outside legal counsel. Decl. of Ian Conner ¶ 4 ("Conner Decl."). It is that ██████████████, all of which was performed after Plaintiffs brought this lawsuit and at the direction of BC Holdings' outside litigation counsel, that Plaintiffs seek to compel BC Holdings to produce.

BC Holdings' outside counsel at Cleary Gottlieb and Latham & Watkins first discussed with the FTC the possibility of a divestiture of certain of Biocoat's assets in late April 2025. *See* Dkt. 203 at ¶ 3. Specifically, BC Holdings provided the FTC with an initial proposed divestiture term sheet on April 24, 2025, and followed up with a revised proposal on May 6, 2025 to address certain concerns raised by the FTC after it received the initial term sheet. *Id.* at ¶¶ 3-4.

On May 13, 2025, BC Holdings' outside counsel gave a presentation of a proposed divestiture package to the FTC. *Id.* at ¶ 12. In direct response to a question from the FTC on the topic, that presentation explained why it was not actionable for BC Holdings to ██████████ ███████████████████████████████████████████████. *See* Decl. of Heather Waller ("Waller Decl."), Ex. A, GTCR-SRDX-LIT300000116 at 2, 6. In response to additional questions from the FTC, BC Holdings provided additional information pertaining to hypothetical alternative divestitures (or lack thereof) raised by the FTC on May 21,

2025 and again on June 17, 2025.  Waller Decl., Ex. B (Ltr. from I. Conner to D. Shaw, May 21, 2025); Waller Decl., Ex. C (Ltr. from I. Conner to D. Shaw, June 17, 2025).

Plaintiffs also had the opportunity, during the depositions of numerous fact witnesses employed by BC Holdings, to ask questions about theoretical alternative divestitures.  Indeed, Plaintiffs did precisely that in deposing ██████████████████████████.  Waller Decl., Ex. D ████████ at 132:18-24); Waller Decl., Ex. E ███████████. at 171:13-172:4); *id.* at 174:15-175:6; Waller Decl., Ex. F (███████ at 191:9-14).  Defendants' counsel did not object to questioning on this topic until the FTC's questions called for information protected by the attorney-client privilege or work product doctrine, at which point counsel appropriately objected and instructed the witnesses not to answer.  Dkt. 199 at 5-6 (citing ██████████████ █████.

Since first discussing a potential divestiture with Plaintiffs in April, Defendants have provided Plaintiffs with all of the non-privileged information that Plaintiffs have requested, including communications with bidders, the Divestiture term sheet, letters of intent from multiple bidders, diligence correspondence, integration planning materials, and the signed Asset Purchase Agreement and related agreements (e.g., the Transition Services Agreement).  *See* Dkt. 203 ¶¶ 3, 7-8, 12.  Defendants have also responded to seven requests for production, four requests for admission, and six interrogatories related to the Divestiture.  *Id.* ¶¶ 7, 12.  Plaintiffs also have had the opportunity to question at least eighteen (18) party and third-party witnesses (including two witnesses from ██████) regarding the Divestiture, and received significant written discovery from ██████, including thousands of pages of documents.  *Id.* ¶¶ 9-10.

The only thing that Plaintiffs complain BC Holdings has not produced is the ██████ ██████ that it conducted shortly after meeting with the FTC in mid-May, at the direction of its

outside counsel. That analysis was prepared solely because of, and in an effort to resolve, this litigation, and to enable counsel to provide their client with legal advice.

## **ARGUMENT**

### I. BC HOLDINGS IS NOT WITHHOLDING THE CHALLENGED ███████ ███████ ON THE BASIS OF THE ATTORNEY-CLIENT PRIVILEGE, AS PLAINTIFFS ARGUE

Plaintiffs' arguments regarding the attorney-client privilege are misplaced. BC Holdings is not withholding the challenged ███████—*i.e.*, the specific ███ at issue—on the ground that they are protected by the attorney-client privilege. *See* Dkt. 199 at 8-9. Rather, BC Holdings has explained to Plaintiffs—through its privilege log and subsequent meet and confers— that it is withholding the ███ based on the work product doctrine because they were "prepared at the request of counsel" in response to the FTC's investigation and this litigation. Dkt. 199-3 at 2-4; *id.* at Exh. C. Thus, Plaintiffs' arguments about the "attorney-client privilege" are irrelevant.

### II. THE WITHHELD ██████████ IS PROTECTED WORK PRODUCT

Plaintiffs do not actually dispute that BC Holdings' ████████ in May 2025 regarding the Divestiture is protected attorney work product. Instead, Plaintiffs argue that it is entitled to less protection because it is "fact work product," as opposed to "opinion work product," and that they have a substantial need for the ███ to enable them to evaluate the sufficiency of the Divestiture. Dkt. 199 at 10-11. Neither argument has merit.

#### A. There Is No Dispute That The Withheld ██████████ Is Protected Work Product

As Plaintiffs recognize, the work product doctrine shields from discovery documents "prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3); *see* Dkt. 199 at 10 (quoting *Appleton Papers, Inc.*, 702 F.3d at 1024). There is no dispute that the withheld ██████████ regarding the Divestiture was performed by BC

Holdings' employees at the direction of BC Holdings' outside counsel because of this lawsuit, and for the purpose of attempting to resolve this litigation, and is thus protected work product. *See* Dkt. 199 at 10 (arguing only that the ███████████ at issue is not *opinion* work product); *see also* Culley Decl. ¶¶ 3-5; Conner Decl. ¶¶ 4-5.

The fact that non-lawyers created the withheld ███████████, *see* Dkt. 199 at 10, does not make them any less protected. *See Sullivan v. Alcatel-Lucent USA, Inc.*, 2013 WL 2637936, at *10 (N.D. Ill. June 12, 2013) ("[W]ork-product protection applies to documents created by non-attorneys."); *City of Lakeland Emps. Pension Plan v. Baxter Int'l Inc.*, 2013 WL 2151509, at *2 (N.D. Ill. May 16, 2013) (holding that material created by non-lawyer consultants was protected work product). And contrary to Plaintiffs' suggestion, work product does not lose its protected status because it includes "factual material." *See* Dkt. 199 at 10. Plaintiffs' own authority makes this clear. In *Appleton Papers*, the Seventh Circuit rejected the appellants' argument that "factual material" was "not protected work product," reasoning that the argument would "ignore[] Rule 26, which protects *all* 'documents and tangible things that are prepared in anticipation of litigation.'" 702 F.3d at 1023; *see also City of Lakeland*, 2013 WL 2151509, at *2 (recognizing that *"Appleton Papers* … rejected the argument that … the work product doctrine protects only attorney opinions, not facts"). And in *FTC v. Boehringer Ingelheim Pharms., Inc.*, 180 F. Supp. 3d 1, 25 (D.D.C. 2016), the court held that the "broad-ranging factual analysis" of possible "litigation settlement outcomes" *was* protected fact work product.

None of Plaintiffs' cited cases holds to the contrary or supports their argument that the withheld ███████████ is somehow not protected work product. Contrary to Plaintiffs' assertion, *Allen v. CTA*, 198 F.R.D. 495 (N.D. Ill. 2001), does not hold that fact work product is not protected. Instead, *Allen* held that the defendants could not make a "blanket" claim of work

product over all documents generated after an employee filed an internal complaint because "the threat of litigation is perceived in different instances in different cases," and not all the withheld communications were created in reasonable anticipation of litigation. *Id*. at 500-01. Here, there is no dispute that the documents were created in the midst of this litigation. Plaintiffs' reliance on *Vardon Golf Co. v. Karsten Mfg. Corp.*, 213 F.R.D. 528, 534 (N.D. Ill. 2003), is similarly misplaced. Plaintiffs assert that *Vardon Golf* held "that while a party was not required to disclose a legal memorandum, it was obligated to disclose its awareness of a key fact contained in a legal memorandum." Dkt. 199 at 10. Not true: the court instead held that the plaintiff had waived work product protection over certain communications when it had "disclosed" "protected material … in a public document." *Vardon Golf Co.*, 213 F.R.D. at 534.

Because the ██████████████ at issue was created at the direction of BC Holdings' outside counsel due to this litigation and as part of BC Holdings' attempts to proactively resolve Plaintiffs' concerns about the transaction, Culley Decl. ¶¶ 4-5, Conner Decl. ¶ 4, it is protected work product.

**B.    Plaintiffs Have Not Demonstrated, And Cannot Demonstrate, That They Have A Substantial Need For BC Holdings' Protected Work Product**

Fact work product is discoverable only in the "rare" case where the moving party demonstrates that there is a "substantial need" for the information in order to "prepare its case" and "cannot, without undue hardship, obtain their substantial equivalent by other means." *Appleton Papers*, 702 F.3d at 1018; *see* Fed. R. Civ. P. 26(b)(3)(A)(ii). This burden "is difficult to meet." *Appleton Papers*, 702 F.3d at 1018; *see also Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 2000 WL 1898518, *3 (N.D. Ill. Dec. 20, 2000) (holding that burden is "likely to be satisfied only in rare situations, such as those involving witness unavailability") (internal quotation omitted); *Peerless Heater Co. v. Mestek, Inc.*, 1999 WL 35147370, at *5 (E.D. Pa. Dec. 6, 1999)

8

("[M]ere need for information contained in work product does not establish substantial need for the work product itself," and "substantial need" requires "something more than relevancy.") (internal quotation omitted).  Plaintiffs do not come close to making the necessary showing.

*First*, Plaintiffs cannot demonstrate substantial need for the ███████████ because they already have the *facts and data* that underlie those ██████ *i.e.*, the ███████████████ related to the proposed divestiture on which the ██████ are based.  Dkt. 199-3 at 2-3.  Plaintiffs received this information regarding the financing for the Surmodics acquisition before this litigation began.  Plaintiffs thus have had *for months* all the factual information that they need, and the only thing that they now seek is BC Holdings' *analysis* of that data—an analysis that its outside counsel requested for purposes of providing legal advice regarding potential ways to resolve this litigation.  Plaintiffs say that they are "not in a position to █████████████████████████ ██████████" Dkt. 199 at 12, but cite no authority for the proposition that their preference not to undertake their own analysis constitutes the substantial need sufficient to pierce BC Holdings' work product protection.  *See Ventre v. Datronic Rental Corp.*, 1993 WL 524377, at *3 (N.D. Ill. Dec. 13, 1993) (purpose of the substantial need requirement "is to prevent an attorney from waiting while opposing counsel does investigative work and then simply requesting the fruits of such efforts via discovery"); *Todd v. Societe Bic*, 1991 WL 93266, at *1 (N.D. Ill. May 20, 1991) (denying a motion to compel where there was no showing that the substantial equivalent of the information in an investigator's report could not be obtained without undue hardship).

Plaintiffs also cannot demonstrate substantial need for the withheld ███████████ given the significant amount of other discovery they have received regarding the Divestiture.  As noted, on a near real-time basis for the last two months, BC Holdings has produced its communications with third parties, the Divestiture term sheet, letters of interest from multiple bidders, diligence

correspondence, integration planning materials, and the signed and executed agreements. Dkt. 203 ¶¶ 3-4, 7, 12. BC Holdings and ████ have collectively produced thousands of pages of documents. *Id.* at ¶¶ 7, 9. And Plaintiffs have questioned more than 18 witnesses—including two ████ witnesses—regarding the Divestiture, and had the opportunity to question BC Holdings witnesses regarding ████████████████████████████. *Id.* at ¶ 10; *see supra* at 5. Plaintiffs have no answer for why all of this non-privileged information does not suffice. *See United States v. Dish Network, LLC*, 283 F.R.D. 420, 427 (C.D. Ill. 2012) (in denying motion to compel, noting that plaintiffs had "successfully discovered voluminous amounts of information with which to prepare their case" and therefore "failed to meet their burden to overcome the privilege given the amount of information already produced").

*Second*, Plaintiffs cannot demonstrate a substantial need for the withheld ████████ because it is not "core" to Defendants' defense. Dkt. 199 at 11. At the upcoming hearing on Plaintiffs' preliminary injunction motion, the Court will evaluate whether the Divestiture resolves Plaintiffs' alleged concerns that the transaction will cause anticompetitive harm in the alleged market for "outsourced hydrophilic coatings"—in fact, the Divestiture creates *more* competition— and not whether some different divestiture package would also theoretically suffice. *See FTC v. Microsoft Corp.*, 681 F. Supp. 3d at 1093 ("[T]he FTC must address the circumstances surrounding the merger as they actually exist."); *Arch Coal, Inc.*, 2004 WL 7389952, at *1 (evaluating divestiture sale as-is because doing otherwise would require the court to assess a "purely hypothetical transaction of the Commission's making—that none of the parties are proposing").

Plaintiffs are wrong to argue that the Divestiture must "encompass an entire standalone business or product line" to be adequate. Dkt. 199 at 11. The Divestiture is neither "partial" nor "limited," *id.* at 3, as it includes all the coatings that Biocoat uses to compete today along with

10

personnel, a building, and other know-how sufficient to compete on Day 1. Dkt. 202 at 16. Indeed,



. Waller Decl., Ex. G (

July 31, 2025, 256:15-257:7

269:13-17 (same), 163:6-163:9

But regardless, Plaintiffs' own authority confirms that the issue for the Court to decide is whether the *actual* Divestiture before the Court "sufficiently mitigate[s] the merger's effect such that it [is] no longer likely to substantially lessen competition," and not whether the Divestiture is of a "standalone business or product line." *FTC v. Kroger Co.*, 2024 WL 5053016, at *24 (D. Or. Dec. 10, 2024) (quoting *Illumina, Inc. v. FTC*, 88 F.4th 1036, 1059 (5th Cir. 2023)); *accord FTC v. Sysco Corp.*, 113 F. Supp. 3d 1, 73-74 (D.D.C. 2015) (assessing the "competitive pressure exerted by post-divestiture" company and its ability to compete independently) (cited by Plaintiffs at Dkt. 199 at 11). Plaintiffs cannot demonstrate a substantial need where the information they seek is not necessary, or even relevant, to their claims or Defendants' defenses in this case. *See* Fed. R. Civ. P. 26(b)(1).

Plaintiffs thus have not met their burden of demonstrating a substantial need for BC Holdings' protected divestiture scenario analysis.

## III.  BC HOLDINGS HAS NOT WAIVED ANY WORK PRODUCT PROTECTION BY AGREEING TO A DIVESTITURE

Contrary to Plaintiffs' submission, Dkt. 199 at 12-15, BC Holdings has not put its protected work product "at issue" by agreeing to a Divestiture, as there is no "sword/shield" issue at play here.

The law is clear: Waiver of privilege or work product "does not occur simply by the assertion of a claim or defense.  Rather, to waive the privilege, the party to whom the privilege belongs must affirmatively put at issue the specific communication, the document or information to which the privilege attaches."  *Dexia Credit Loc. v. Rogan*, 231 F.R.D. 268, 275 (N.D. Ill. 2004); *see also City of Lakeland*, 2013 WL 2151509, at *2 ("[I]n the context of the attorney-client privilege a disclosure of a portion of a privileged communication waives the privilege as to the portion disclosed and to all other communications relating to the same subject matter."); *Trydel Rsch. Pty. Ltd. v. ITW Glob. Tire Repair, Inc.*, 2024 WL 3950213, at *9 (N.D. Ill. Aug. 27, 2024) ("For a party to waive its privilege and work product protection, sword-and-shield style, it must make an affirmative attempt to use communications protected by a privilege to influence a decision maker.").

That is not happening here.  BC Holdings is not asserting any privileged communications or protected work product as a sword.  In fact, BC Holdings is not affirmatively raising the ███████████████████████████████████████ Information about the feasibility of this hypothetical alternative divesture was provided to the FTC *at the FTC's specific request*.  *See supra* at 4.  At no point has BC Holdings affirmatively raised the possibility ██████████████ ████████████████████  rather, this hypothetical alternative was manufactured by Plaintiffs themselves.  At no time have Defendants affirmatively put at issue their protected work product or

privileged communications related to either the Divestiture or any hypothetical alternative divestiture scenario. In other words, there is no "sword and shield" here.

For this reason, Plaintiffs' cited cases, Dkt. 199 at 12, are inapposite. For instance, *Trading Techs. Int'l Inc. v. eSpeed, Inc.*, involved an advice-of-counsel defense where privileged communications were squarely put at issue. 431 F. Supp. 2d 834, 837-38 (N.D. Ill. 2006). In *Fultz v. Federal Sign*, the defendant attempted to reserve its right to use evidence from counsel's privileged investigation to defend its termination of the plaintiff, while at the same time claiming the counsel's conclusion was privileged. 1995 WL 76874, at *2 (N.D. Ill. Feb. 17, 1995). In *Reintz v. City of Mt. Juliet*, the defendant attached the summary report of its internal investigation to its summary judgment motion, thereby putting at issue the report and waiving privilege with respect to interview memoranda underlying that report. 680 F. Supp. 2d 888, 894 (M.D. Tenn. 2010). And, in *Motorola Solutions, Inc. v. Hytera Commc'ns Corp.*, the court found the plaintiff had *not* waived attorney client privilege where it had not sought to use privileged material to prove its claims. 2018 WL 1804350, at *7 (N.D. Ill. Apr. 17, 2018). BC Holdings has not relied, and does not intend to rely, on the withheld ████████████, and thus is not using the withheld ████████████ as a sword (or a shield). *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 244 F.R.D. 412, 429 (N.D. Ill. 2006) (rejecting argument that defendants were using protected work product as a "sword" where defendants did not intend to use those materials in its defense).

Plaintiffs likewise are wrong to argue that BC Holdings has "selectively" waived or "partially disclosed" any of the withheld ████████████. Dkt. 199 at 13. BC Holdings' work product prepared while evaluating the FTC's questions about the Divestiture are no different than a party creating privileged or work product-protected drafts of a mediation statement or other analysis, the drafts of which are protected despite the final version being shared with the other side

13

in mediation. Indeed, BC Holdings provided the FTC with an Excel spreadsheet that it prepared specifically to respond to their questions. Waller Decl., Ex. H, GTCR-SRDX-LIT300000139. Plaintiffs are neither entitled to the communications and prior drafts of those responses nor to a different analysis that was conducted at the request of counsel because of the litigation. They cite no case to support their arguments to the contrary.

Even if BC Holdings had put any of its protected work product "at issue"—which it has not—Plaintiffs are wrong to suggest that this would result in a waiver of protection for the ████ ████ that Plaintiffs seek. As the Seventh Circuit explained in *Appleton Papers*, the principle of subject-matter waiver of privileged communications does not apply with the same force to the work product doctrine. *Appleton Papers*, 702 F.3d at 1024-25. Because of the "distinct" and "broader" purposes served by the work product doctrine, "disclosure of some documents does not necessarily destroy work product protection for other documents of the same character." *Id.* at 1025. Therefore, although the government in *Appleton Papers* voluntarily waived work product protection over certain documents, other documents that were "neither used nor released to [plaintiffs]" were not waived, because the government still had an interest in benefitting from its preparation of those documents for litigation. *Id.*

Plaintiffs' cited cases, Dkt. 199 at 13-15, are inapposite. In *Ahern v. Pacific Gulf Marine, Inc.*, the defendants argued they did not have to produce an expert report until after they had designated the expert as a testifying witness. 2007 WL 9723901 (M.D. Fl. Nov. 8, 2007). The court held that the defendants had waived privilege over the report because they purposefully produced a memorandum during discovery that quoted and summarized the report. *Id.* at 1. In *Nye v. Sage Prods., Inc.*, 98 F.R.D. 452 (N.D. Ill. 1982), the court held that the plaintiff waived attorney-client privilege because it had "not tak[en] the precautions necessary to protect the[]

14

attorney-client privilege" and had voluntarily disclosed otherwise privileged material. *Id*. at 454. And, in *Tropical Paradise Resorts, LLC v. Rockhill Ins. Co.*, 2020 WL 13880656 (S.D. Fla., Aug. 30, 2020), the court held that an insurance company could not rely on its "claim file" to establish its defense where it had withheld those materials as privileged. *Id*. at *2.

At bottom, Plaintiffs have had ample discovery on the Divestiture, including responses to interrogatories, requests for admissions, production of contemporaneous communications and documents related to the Divestiture, and multiple depositions of party (including BC Holdings) and third party (including ███████ witnesses. BC Holdings has withheld only a small number of work product protected documents, including the ████████████ Plaintiffs now seek— ████████████ that was conducted at the direction of outside counsel because of, and in an effort to resolve, this litigation. That ████████ is protected work product, Plaintiffs have not demonstrated and cannot demonstrate a substantial need to pierce BC Holdings' work product protection, or that BC Holdings waived work product protection over all ██████ related to all possible divestiture packages simply because it agreed to the Divestiture in an attempt to resolve this litigation.

## CONCLUSION

Plaintiffs' motion to compel should be denied. Plaintiffs offer no basis to compel Defendants to produce the ████████████████████ that was directed by outside counsel in the midst of this litigation. Nonetheless, if the Court wishes to review the challenged documents, BC Holdings will submit them for an *in camera* review.

Date: August 6, 2025

Respectfully submitted,

*/s/ Sean M. Berkowitz*
Sean M. Berkowitz
Gary Feinerman
Heather A. Waller
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
312-876-7700
sean.berkowitz@lw.com
gary.feinerman@lw.com
heather.waller@lw.com

Kelly S. Fayne (pro hac vice)
LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
415-391-0600
kelly.fayne@lw.com

Marguerite Sullivan (pro hac vice)
Ian Conner (pro hac vice)
Amanda P. Reeves (pro hac vice)
Lawrence Buterman (pro hac vice)
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Washington, DC 20004
202-637-2200
marguerite.sullivan@lw.com
ian.conner@lw.com
amanda.reeves@lw.com
lawrence.buterman@lw.com

*/s/ Daniel P. Culley*
Daniel P. Culley
D. Bruce Hoffman (*pro hac vice*)
Blair West Matthews (*pro hac vice*)
Cleary Gottlieb Steen & Hamilton LLP
2112 Pennsylvania Avenue NW
Washington, DC 20037
(202) 974-1593
dculley@cgsh.com
bhoffman@cgsh.com

16

bmatthews@cgsh.com

Heather S. Nyong'o (*pro hac vice*)
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
650 California St.
San Francisco, CA 94108
415-796-4400
hnyongo@cgsh.com

*Counsel for Defendants GTCR, LLC and*
*GTCR BC Holdings, LLC*

**<u>CERTIFICATE OF SERVICE</u>**

Pursuant to Local Rule 5.9, I hereby certify that on this 6th day of August 2025, the foregoing was electronically filed using the Court's CM/ECF system and was also served via electronic mail to the following:

Anna Sallstrom (anna.sallstrom@faegredrinker.com)
Anna C. Van de Stouwe (avandestouwe@ftc.gov)
Andrew Scarafile (andrew.scarafile@faegredrinker.com)
Brian O'Dea (bodea@ftc.gov)
Colin M. Herd (colin.herd@kirkland.com)
Daniel Culley (dculley@cgsh.com)
Daniel Zach (dan.zach@kirkland.com)
D. Bruce Hoffman (bhoffman@cgsh.com)
Dylan G. Brown (dbrown4@ftc.gov)
Elizabeth Klinger (eklinger@ftc.gov)
Elizabeth Odette (Elizabeth.Odette@ag.state.mn.us)
Erin Conti (Erin.Conti@ag.state.mn.us)
Evelyn Hopkins (ehopkins1@ftc.gov)
Gabriel Lazarus (glazarus@cgsh.com)
Heather Nyong'o (hnyongo@cgsh.com)
Jacob Hamburger (jdanziger@ftc.gov)
James Weiss (jweiss@ftc.gov)
Jessica B. Weiner (jweiner@ftc.gov)
Joanne Lewers (joanne.lewers@faegredrinker.com)
John Milligan (john.milligan@ilag.gov)
Jon Woodruff (Jon.Woodruff@ag.state.mn.us)
Jonathan Harold Todt (jonathan.todt@faegredrinker.com)
Jordan Andrew (jandrew@ftc.gov)
Jose Lopez, Jr. (jose.lopez@faegredrinker.com)
Joshua Patrick Mahoney (josh.mahoney@faegredrinker.com)
Justin Moor (justin.moor@ag.state.mn.us)
Keith Holleran (kholleran@ftc.gov)
Kendall Alford (kalford@ftc.gov)
Lauren Gaskin (lgaskin@ftc.gov)
Le'Ora P. Tyree (ltyree@ftc.gov)
Leonardo Chingcuanco (lchingcuanco@ftc.gov)
Liliana P. Vargas (lvargas@ftc.gov)
Lily Verbeck (lverbeck@ftc.gov)
Madelyn A. Morris (madelyn.morris@kirkland.com)
Maia Perez (mperez@ftc.gov)
Matthew E. Joseph (mjoseph1@ftc.gov)
Matthew J. Reilly (matt.reilly@kirkland.com)
Matthew Lechner (matthew.lechner@faegredrinker.com)

Matthew Yelovich (myelovich@cgsh.com)
Megan McKinley (mmckinley@ftc.gov)
Miranda Herzog (mherzog@cgsh.com)
Nicholas A. Widnell (nwidnell@ftc.gov)
Paul H. Saint-Antoine (paul.saint-antoine@faegredrinker.com)
Rebecca Danielle Kerley (rkerley@ftc.gov)
Richard Cunningham (rich.cunningham@kirkland.com)
R. Tyler Sanborn (rsanborn@ftc.gov)
Valerie Raedy (valerie.raedy@usdoj.gov)
Varnitha Sivaprasad (vsivaprasad@ftc.gov)
Wade Lippard (wlippard@ftc.gov)
William Molloy Macci (wmacci@ftc.gov)
William Segal (wsegal@ftc.gov)
Yan Gao (ygao@ftc.gov)
Zach Biesanz (zach.biesanz@ag.state.mn.us)

Dated: August 6, 2025                    */s/ Sean Berkowitz*
                                         Sean Berkowitz