UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **FEDERAL TRADE COMMISSSION,** **STATE OF ILLINOIS,** and **STATE OF MINNESOTA,** *Plaintiffs,* v. **GTCR, LLC,** **GTCR BC HOLDINGS, LLC,** and **SURMODICS, INC.,** *Defendants.* | Case No: 1:25-cv-02391 Hon. Jeffrey I. Cummings |

**NON-PARTY JOHNSON & JOHNSON'S UNOPPOSED SUPPLEMENTAL MOTION FOR IN CAMERA TREATMENT OF COUNTER-DESIGNATED DEPOSITION TESTIMONY**

Pursuant to the Agreed Confidentiality Order (ECF No. 61), the Proposed Joint Pre-Hearing Order (ECF No. 243), and Local Rule 26.2, non-party Johnson & Johnson ("**J&J**") respectfully moves the Court for *in camera* treatment of additional confidential video deposition testimony that Plaintiffs included in their counter-designations[1] and plan to play at the upcoming hearing. Specifically, J&J requests that the Court afford *in camera* treatment to the highlighted deposition testimony submitted herewith as Exhibits A and B. J&J has conferred with both parties

---

[1] Non-party J&J previously timely filed its initial Unopposed Motion for In Camera Treatment of Exhibits and Deposition Testimony (ECF No. 321) on August 14, in accordance with the Court's August 7, 2025, Minute Entry (ECF No. 225), and submits this Supplemental Motion to protect confidential information contained in the video deposition testimony that Plaintiffs indicated they would counter-designate via correspondence to J&J's outside counsel on August 18, 2025.

1

in this case and represents that this motion is unopposed by Plaintiffs and Defendants. This filing complies with Local Rule 5.6 pursuant to the instructions in the Case Management Order (ECF No. 71 at C.5) and the Agreed Confidentiality Order (ECF No. 61 at ¶ 11).

The testimony for which J&J seeks *in camera* treatment[2] was previously designated as Confidential Material under the Confidentiality Order because it contains Competitively Sensitive Information—including "trade secret or competitively sensitive research, analysis, technical, financial, development, or commercial information that has not been released into the public domain." (ECF No. 61 at ¶ 1.) The Confidentiality Order and Joint Pre-hearing Order instruct that "Parties and non-parties may address confidentiality by showing the public redacted documents, showing documents to witnesses but not the public[.]" (ECF No. 207 at IX.l.) The Joint Pre-Hearing Order further provides that if a non-party has reason to believe that questioning will implicate its confidential information, it "may move that the courtroom be closed to the public to hear this testimony." *Id*.

J&J is not a party to this case and has provided documents and deposition testimony in good faith in response to non-party subpoenas. The business strategy, commercial terms, and technical product information contained in these materials are J&J's trade secrets and confidential commercial information, which qualifies as Competitively Sensitive Information under the

---

[2] J&J received Plaintiffs' video deposition designations in the form of transcripts with designated testimony highlighted in orange. Accordingly, J&J has marked the testimony for which it seeks *in camera* treatment with red boxes in Exhibits A & B to avoid overlapping highlights that may interfere with legibility in compliance with Local Rule 26.2. J&J further seeks to redact material within the excerpted testimony which Plaintiffs do not plan to introduce into evidence, as this material is not relevant to the case and will thus not affect the disposition of the case. *See Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944 (7th Cir. 1999) ("It is true that pretrial discovery, un-like the trial itself, is usually conducted in private."); *cf. United States v. Foster*, 564 F.3d 852, 853 (7th Cir. 2009) ("Information that affects the disposition of litigation belongs in the public record unless a statute or privilege justifies nondisclosure.").

Confidentiality Order.[3] Recognizing the sensitivity of this Confidential Material, neither Plaintiffs nor Defendants intend to oppose J&J's supplemental motion. As discussed below, and for good cause shown, the Court should afford this material the requested *in camera* treatment to avoid disclosing J&J's Competitively Sensitive Information to the public and marketplace.

## ARGUMENT

In evaluating a motion to seal, a court must "weigh[] the interests advanced by the parties in light of the public interest and duty of the courts." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 602 (1978). The general rule is that documents "are open to public inspection unless they meet the definition of trade secrets or other categories of bona fide long-term confidentiality." *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545 (7th Cir. 2002) (citations omitted). But the public's right of access to judicial proceedings is not absolute and "must be balanced against competing values that may require closure" of such proceedings. *In re Associated Press*, 162 F.3d 503, 508 (7th Cir. 1998); *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013) ("A litigant is allowed, for example, to conceal trade secrets . . . ."); *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999) (holding that a litigant's property and privacy interests may override the public interest in judicial proceedings); *Life Spine, Inc. v. Aegis Spine, Inc.*, No. 19 CV 7092, 2022 WL 1307111, at *2 (N.D. Ill. May 2, 2022) (holding that protection should be afforded to information "whose economic value depends on its secrecy.") (citations omitted).

---

[3] Federal Rule of Civil Procedure 26(c)(1) allows a court to, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."

In *KM Enters. v. Glob. Traffic Techs., Inc.*, the Seventh Circuit considered a motion to seal several documents in an appellate record. 725 F.3d 718, 734 (7th Cir. 2013). The respondent moved to seal (or return to the district court) several documents in order to protect sensitive, confidential pricing and customer information. *Id*. In granting respondent's motion to seal, the Court stressed that "narrow, specific requests will be granted when based on articulated reasonable concerns for confidentiality." *Id*. (citing *Baxter Int'l*, 297 F.3d at 546-47; *see also Life Spine*, 2022 WL 1307111, at *3 (ordering that information related to private research, private product information, and confidential FDA submissions remain under seal). Indeed, courts have protected a range of confidential commercial information and trade secrets, such as pricing and contract terms, in FTC merger litigation like the instant case. *See, e.g., F.T.C. v. OSF Healthcare Sys.*, 2012 WL 1144620 at *3 (N.D. Ill. Apr. 5, 2012) (collecting cases in which courts have granted protection to, *inter alia*, contract terms, pricing, distribution, marketing, and bidding information).

Here, the Confidential Material J&J seeks to protect raises similar interests to the information protected in *KM Enterprises* and *OSF Healthcare System*. These include, among others: (i) non-public commercial terms between J&J and its hydrophilic coatings suppliers; (ii) technical product testing results concerning the performance of hydrophilic coatings applied to J&J's products; (iii) internal, non-public evaluation by J&J of available suppliers of hydrophilic coatings; and (iv) J&J's procurement and negotiation strategy. J&J goes to great lengths to maintain the secrecy of this proprietary information in the ordinary course, generally limiting its disclosure on a "need-to-know" basis within J&J (and, when applicable, its direct commercial partners subject to confidentiality obligations). J&J only provided such commercial information and trade secrets in this case subject to the Confidentiality Order granting protection over its Confidential Material.

Public disclosure of this Confidential Material would have real-world consequences. Market participants, including potential suppliers, would instantaneously gain insight into commercial terms and strategies covering a critical input that could be used to J&J's disadvantage in future negotiations and competitive bids. J&J's competitors would understand not only the criteria it uses to evaluate hydrophilic coatings, but the actual performance of those coatings applied to J&J's products. Such concerns more than satisfy the criteria for protection from public disclosure, especially because J&J is a non-party that has limited ability to control the way the parties may use their Confidential Materials. *See, e.g.*, *Tabiti v. LVNV Funding, LLC*, 2018 WL 11477159, at *1 (N.D. Ill. Aug. 8, 2018) (ordering documents under seal when the moving party has "a particularized basis for claiming the discovery documents are trade secrets that are maintained as confidential and could be used by competitors to gain an advantage in the marketplace . . . ."); *In re Northshore University Healthsystem,* 254 F.R.D. 338, 342-343 (N.D. Ill. 2008) (explaining that the non-parties have a less demanding burden to show good cause because "[n]on-party organizations are limited in their ability to control the manner in which parties use their confidential commercial documents."). As contemplated by Local Rule 26.2(c)(3), J&J lists below the specific confidentiality concern raised by each transcript designation for which it seeks *in camera* treatment:

| Transcript Citation | Confidential Material |
|---|---|
| *July 8, 2025: Testimony of William Patrick Stephens* ||
| 18:15-18:17 | Testimony concerning choice of product components and J&J's procurement practices. |
| 23:4-23:9 | Testimony concerning J&J's procurement practices. |
| 23:12-23:13 | Testimony concerning J&J's procurement practices. |

5

| Transcript Citation | Confidential Material |
| --- | --- |
| 28:11-28:16 | Testimony concerning commercial rationale for choice of product component. |
| 52:4-52:11 | Testimony concerning J&J's procurement practices. |
| 52:19-52:22 | Testimony concerning J&J's procurement practices. |
| 53:9-53:24 | Testimony concerning internal evaluation of suppliers. |
| 54:1-54:14 | Testimony concerning internal evaluation of suppliers. |
| 55:1-55:3 | Testimony concerning internal evaluation of suppliers. |
| 57:11-57:22 | Testimony concerning internal evaluation of suppliers. |
| 67:24-68:8 | Testimony concerning internal evaluation of suppliers. |
| 92:11-92:16 | Testimony concerning internal evaluation of suppliers. |
| 92:19-92:20 | Testimony concerning coating testing practices. |
| 96:19-97:1 | Testimony concerning manufacturing practices. |
| 104:4-104:6 | Testimony concerning commercial rationale for choice of product component. |
| 104:10-105:22 | Testimony concerning commercial rationale for choice of product component. |
| 106:1-106:12 | Testimony concerning commercial rationale for choice of product component. |
| 107:3-107:8 | Testimony concerning J&J's procurement practices. |
| 109:7-109:9 | Testimony concerning J&J's procurement practices. |
| 109:11-109:20 | Testimony concerning J&J's procurement practices. |
| 110:1-110:2 | Testimony concerning evaluation of supplier. |

| Transcript Citation | Confidential Material |
|---|---|
| 110:18-110:19 | Testimony concerning supplier evaluation and negotiation strategy. |
| 110:21-111:6 | Testimony concerning supplier evaluation and negotiation strategy. |
| 113:10-113:11 | Testimony concerning J&J's procurement practices. |
| 113:13-113:19 | Testimony concerning procurement practices. |
| 114:8-115:8 | Testimony regarding in-house performance testing and regulatory requirements. |
| 115:11-115:17 | Testimony regarding choice of product component, in-house performance testing and regulatory requirements. |
| 115:20 | Testimony regarding choice of product component, in-house performance testing and regulatory requirements. |
| 116:10-116:13 | Testimony regarding capital expenditures. |
| 116:16-117:3 | Testimony regarding capital expenditures, manufacturing capabilities, and in-house performance testing. |

| Transcript Citation | Confidential Material |
|---|---|
| *July 10, 2025: Testimony of Bart A. Johnson* ||
| 15:12-15:23 | Testimony regarding J&J's product design. |
| 27:6-27:9 | Testimony regarding in-house performance testing. |
| 27:11-27:14 | Testimony regarding in-house performance testing. |
| 63:2-63:10 | Testimony regarding J&J's procurement practices. |
| 67:3-67:6 | Testimony regarding in-house performance testing, choice of product component, and regulatory requirements. |

| Transcript Citation | Confidential Material |
|---|---|
| 67:9-67:23 | Testimony regarding in-house performance testing, choice of product component, and regulatory requirements. |
| 73:16-73:18 | Testimony regarding J&J's procurement practices. |
| 73:21-73:24 | Testimony regarding J&J's procurement practices. |
| 78:2-78:5 | Testimony regarding J&J procurement practices and product design |
| 79:4-79:7 | Testimony regarding commercial rationale for choice of product component. |
| 79:10-79:21 | Testimony regarding commercial rationale for choice of product component. |
| 79:24-80:21 | Testimony regarding in-house testing and business agreements with suppliers. |
| 81:15-81:18 | Testimony regarding internal evaluation of suppliers. |
| 82:5-82:7 | Testimony regarding internal evaluation of suppliers. |
| 82:10-82:18 | Testimony regarding internal evaluation of suppliers and in-house testing. |
| 82:23-83:8 | Testimony regarding J&J's procurement practices. |

**CONCLUSION**

For the foregoing reasons, J&J respectfully requests that the Court issue an order: (a) closing the courtroom, with notice to the public on the day of the hearing, for those portions of the hearing dealing with the Confidential Information described herein; and (b) permanently seal portions of the deposition testimony that reflect or contain such information.

| | |
|---|---|
| Dated: August 19, 2025 | */s/ Antonia B. Sherman*<br>Antonia B. Sherman *(admitted pro hac vice)*<br>Benjamin J. Bauer *(admitted pro hac vice)*<br>Linklaters LLP<br>601 13th St NW, Ste 400S<br>Washington, DC 20005<br>Telephone: (202) 654-9268<br>Email: antonia.sherman@linklaters.com<br>ben.bauer@linklaers.com<br>*Counsel for Johnson & Johnson* |

**CERTIFICATE OF SERVICE**

I hereby certify that on August 19, 2025, the foregoing was electronically transmitted to the Clerk of Court using the ECF system for filing. A Notice of Electronic Filing was transmitted to all ECF registrants. Parties may access this filing through the Court's system.

                                                */s/ Antonia B. Sherman*
                                                Antonia B. Sherman *(admitted pro hac vice)*