**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, et al., *Plaintiffs*, v. GTCR BC HOLDINGS, et al., *Defendants*. | Civil Case No. 1:25-02391 **FILED UNDER SEAL** |

**NON-PARTY TERUMO AMERICAS HOLDING, INC.'S UNOPPOSED
MOTION FOR AN ORDER TO PROVIDE *IN CAMERA* TREATMENT OF
CONFIDENTIAL MATERIALS**

Non-party Terumo Americas Holding, Inc. ("Terumo") hereby moves the Court pursuant to Federal Rule of Civil Procedure 26(c), Paragraph 11 of the Agreed Confidentiality Order entered in this case on April 11, 2025 (Dkt. No. 61), the Court's Minute Order dated August 8, 2025 (Dkt. No. 225), and Section IX(o) of the Joint Pre-Hearing Order entered on August 12, 2025 (Dkt. No. 243), for an Order to provide *in camera* treatment of its confidential business information contained in the documents and deposition transcripts that the litigants have indicated that they intend to introduce into evidence in connection with the preliminary injunction hearing. Terumo's motion is unopposed.

**I.      Introduction**

In or around October 2024, Terumo Medical Corporation (an operating subsidiary of Terumo) received a Civil Investigative Demand ("CID") from the Federal Trade Commission ("FTC") in connection with the FTC's investigation of Defendants' proposed merger. The CID required Terumo Medical Corporation to produce competitively sensitive confidential business

information. Terumo Medical Corporation complied with the CID and produced competitively sensitive information to the FTC—including ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—with the understanding that such materials would remain confidential. Terumo Medical Corporation labeled its submissions "CONFIDENTIAL."

On April 11, 2025, this Court entered an Agreed Confidentiality Order, which governs the production and use of certain "Confidential Material," including "Competitively Sensitive Information," which refers to "any trade secret or competitively sensitive research, analysis, technical, financial, development, or commercial information that has not been released into the public domain." Agreed Confidentiality Order, Dkt. No. 61, at 1. The Agreed Confidentiality Order limits disclosure of Confidential Material to persons designated in the Agreed Confidentiality Order. *Id.* at 4-6.

In April 2025, Terumo received subpoenas from the FTC and GTCR BC Holdings, LLC ("GTCR") in connection with the current litigation. The subpoenas required Terumo to produce competitively sensitive confidential business information, including documents and information about several of its operating subsidiaries' ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Terumo complied with the subpoenas and produced competitively sensitive documents and information to the FTC and Defendants with the understanding that such materials would remain confidential. Terumo labeled each of the documents it produced as "CONFIDENTIAL" in accordance with Paragraph 6 of the Agreed Confidentiality Order.

In June 2025, the FTC and GTCR issued subpoenas for testimony pursuant to Federal Rule of Civil Procedure 30(b)(6) to Terumo. Corporate representatives of Terumo provided deposition testimony in response to those subpoenas on two dates: June 27, 2025 and July 8, 2025. At the beginning of each deposition, counsel for Terumo designated the transcripts as Confidential

Material pursuant to the Agreed Confidentiality Order, and requested that Terumo's identity be treated as Confidential Material pursuant to the Agreed Confidentiality Order. GTCR's deposition subpoena included a request for information, in response to which Terumo provided documents that were also labeled "CONFIDENTIAL" pursuant to the Agreed Confidentiality Order.

On August 4, 2025, counsel to GTCR notified Terumo that Defendants have included certain Terumo materials on their exhibit list in connection with the preliminary injunction hearing in this matter. The FTC provided similar notice on August 6, 2025.

On August 12, 2025, Terumo notified counsel for the FTC and GTCR that it intended to move the Court for an order granting *in camera* treatment of the confidential and competitively sensitive information contained in the documents and transcripts identified by the litigants. Terumo met and conferred separately with Defendants and the FTC on August 13, 2025, and neither opposes this motion.

## II. Documents for Which Terumo Seeks Protection

Terumo closely reviewed the proposed hearing exhibits identified by the FTC and Defendants and limits its request for *in camera* treatment to competitively sensitive, nonpublic, confidential business information that, if it were to become part of the public record, would significantly harm Terumo's ability to complete, including by ████████████████████ ████████████████████████████████████████████████████████████, thereby harming Terumo's business operations.

Terumo seeks *in camera* treatment for the following documents and transcripts, each of which constitutes a confidential document:

| Exhibit Number | Description | Party | Redactions Sought |
|---|---|---|---|
| Exhibit 1 | Terumo Neuro[1] ▓▓▓▓▓▓▓ (TERUMO-00000158) | Both Plaintiffs and Defendants | Entire Document |
| Exhibit 2 | Terumo Neuro – Lists of Devices and Coating Suppliers Used/Considered (PX3170 / TERUMO-0000189) | Both Plaintiffs and Defendants | Redacted Portions |
| Exhibit 3 | Terumo Medical Corporation – Lists of Devices and Coating Suppliers Used/Considered (PX3104) | Both Plaintiffs and Defendants | Redacted Portions |
| Exhibit 4 | Transcript of the 30(b)(6) Deposition of Terumo Medical Corporation | Both Plaintiffs and Defendants | Redacted Portions |
| Exhibit 5 | Volume and Revenue for Terumo Products (PX3102 / TERUMO-00000154) | Plaintiffs | Redacted Portions |
| Exhibit 6 | Terumo Medical Corporation's Response to the FTC's Civil Investigative Demand (FTC-PROD-000007072) | Defendants | Redacted Portions |
| Exhibit 7 | Quote from Harland Medical System (FTC-PROD-000007089) | Defendants | Redacted Portions |
| Exhibit 8 | Transcript of the 30(b)(6) Deposition of Terumo Neuro | Defendants | Redacted Portions |

**III.   Confidential Business Information of Non-Parties Is Routinely Protected from Disclosure**

"The general rule is that the record of a judicial proceeding is public," *Jessup v. Luther*, 277 F.3d 926, 927 (7th Cir. 2002) (collecting cases), but that rule is "not absolute," *Nixon v. Warner Commc'ns*, 435 U.S. 589, 598 (1978). Courts in this circuit routinely permit non-parties to protect their confidential commercial documents and information from disclosure. *See, e.g.*, *Fed. Trade Comm'n v. OSF Healthcare Sys.*, No. 3:11-cv-50344, 2012 WL 1144620, at *2-3 (N.D. Ill. Apr. 5,

---

[1] Microvention, Inc. d/b/a Terumo Neuro is an operating subsidiary of Terumo.

2012) (protecting non-party's confidential business information from disclosure in the context of the FTC's motion for a preliminary injunction); *In re Aqua Dots Prods. Liab. Litig.*, No. 1:08-CV-2364, 2009 WL 1766776, at *2-4 (N.D. Ill. June 23, 2009) (documents containing financial information and evidencing business strategies granted confidential treatment); *Muehlbauer v. Gen. Motors Corp.*, No. 05 C 2676, 2009 WL 874511, at *2-3 (N.D. Ill. Mar. 31, 2009) (finding documents with engineering evaluations, "cost projections, and potential business strategies" to be protected); *see also* Fed. R. Civ. P. 26(c)(1)(G) (authorizing protection of "a trade secret or other confidential research, development, or commercial information"); Minute Order, *Fed. Trade Comm'n v. Advocate Health Care Network*, No. 1:15-cv-11473, Dkt. No. 407 (N.D. Ill. Apr. 8, 2016) (granting a non-party's motion for *in camera* treatment in a preliminary injunction matter involving an FTC challenge to a proposed transaction).

As the Supreme Court has recognized, courts have "refused to permit [litigants' documents] to serve . . . as sources of business information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 598. The standard for non-parties is "less demanding" than for the litigating parties. *OSF Healthcare Sys.*, 2012 WL 1144620, at *1; *cf. Advocate Health Care Network*, 162 F. Supp. 3d 666, 671-72 (N.D. Ill. 2016) (amending protective order to protect non-party information because, unlike "an exchange of documents between two sides in a lawsuit," the non-parties "g[a]ve up exceedingly confidential information in response to a government subpoena"). Because "[n]on-party organizations are limited in their ability to control the manner in which parties use their confidential commercial documents," courts have typically paid deference to non-parties' interests when they are "requested to produce documents or other materials that contain confidential commercial information or trade secrets." *In re Northshore Univ. Healthsystem*, 254 F.R.D. 338, 343-44 (N.D. Ill. 2008).

5

### IV. Terumo's Documents Contain Confidential Material Such That Disclosure Would Result in Serious Injury

The information for which Terumo requests confidential, *in camera* treatment falls clearly within the aforementioned guidelines. This information relates to the following topics: (1) specific, non-public details about Terumo's devices, including revenue information, device sales numbers, and details about Terumo's products' coating and coating application materials; (2) Terumo's ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅; (3) information related to ▅▅▅▅▅▅▅▅▅▅; (4) specifics about Terumo Medical Corporation's most recent coating evaluation process, including the suppliers considered and the results at each stage of the process; and (5) ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅. All of this information constitutes "business information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 598. As a result, it must be protected from public disclosure to prevent competitors and/or suppliers from gaining access to confidential information that would result in a material detrimental impact on Terumo's competitive position. *See Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 545, 547 (7th Cir. 2002). Furthermore, protecting this information of Terumo, a non-party, would not offend the public interest. *See OSF Healthcare Sys.*, 2012 WL 1144620, at *1.

Details about the competitively sensitive nature of the documents follows:

- Exhibit 1 describes Terumo Neuro's 

- Exhibit 2 was prepared upon request from GTCR's counsel in connection with the 30(b)(6) deposition of Terumo Neuro. Competitively sensitive information in this document includes specific features of hydrophilic coating on Terumo Neuro's products (Ex. 2 at 1), Terumo Neuro's revenue numbers on a device-level basis (Ex. 2 at 1), and the coatings that Terumo Neuro considered and tested for each of its devices (Ex. 2 at 3-4). Disclosure of this information would give competitors and/or suppliers insight into Terumo Neuro's strategic and competitive decision-making processes, allow them to gain a competitive advantage, and have a material detrimental impact on Terumo Neuro's competitive position.

- Exhibit 3 was prepared upon request from GTCR's counsel in connection with the 30(b)(6) deposition of Terumo Medical Corporation. Competitively sensitive information in this document includes specific features of hydrophilic coating on Terumo Medical Corporation's products (Ex. 3 at 1), Terumo Medical Corporation's revenue numbers on a device-level basis (Ex. 3 at 1), and the coatings that Terumo Medical Corporation considered and tested for each of its devices (Ex. 3 at 3-4). Disclosure of this information would give competitors and/or suppliers insight into Terumo Medical Corporation's strategic and competitive decision-making processes, allow them to gain a competitive advantage, and have a material detrimental impact on Terumo Neuro's competitive position.

- Exhibit 4, the transcript of the 30(b)(6) deposition of Terumo Medical Corporation, contains the following competitively sensitive information: (1) sales information for Terumo Medical Corporation's devices (Ex. 4 at 29); (2) information about the specific lubricious coatings tested and used for Terumo Medical Corporation's devices (Ex. 4 at 31-33, 35-36, 39, 42, 44-46, 50-58, 60-69), including confirming information in Exhibit 3; (3) information about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 4 at 59, 74); and (4) information about Terumo Medical Corporation's coating feasibility testing procedures and analysis of coating suppliers ▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 4 at 71-73, 75, 80-92, 94-95, 97-104, 105-107). Terumo Medical Corporation's process for evaluating hydrophilic coating suppliers and conducting feasibility testing clearly constitutes competitively sensitive information that competitors and/or suppliers could use to gain a competitive advantage over Terumo Medical Corporation. Further, information about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is highly confidential information that ▮▮▮▮▮▮▮▮▮▮▮▮ could use to gain a competitive advantage.

- Exhibit 5 contains data from Terumo Medical Corporation; Bolton Medical, Inc. d/b/a Terumo Aortic ("Terumo Aortic");[2] and Terumo Neuro. The data includes the following: (1) specifics related to the coating used on each device, including the equipment used to apply the coating; (2) annual revenue figures on a device-level basis; (3) sales volume on a device-level basis for Terumo Aortic's devices; and (4) projected revenue for FY25 through FY28 for Terumo Neuro's SOFIA devices. This non-public device-level data is competitively sensitive, and disclosure would give competitors and/or suppliers insight

---

[2] Terumo Aortic is an operating subsidiary of Terumo.

7

into Terumo's businesses that would have a material detrimental impact on Terumo's competitive position. Further, disclosure of forward-looking sales projections would give competitors insight into Terumo Neuro's future business strategies, which is key competitive business information where disclosure would detrimentally impact Terumo Neuro's competitive standing.

- Exhibit 6 contains Terumo Medical Corporation's response to the FTC's investigatory CID, submitted on October 14, 2024. Redacted information includes the following: (1) specific details about the process by which Terumo Medical Corporation evaluates potential hydrophilic coating suppliers (Ex. 6 at 1-2); (2) ███████████████ (Ex. 6 at 2-4); (3) ███████████████ (Ex. 6 at 4, 6-13); and (4) ███████████████ (Ex. 6 at 6-7). Terumo Medical Corporation's process for evaluating hydrophilic coating suppliers, and ███████████████, clearly constitute competitively sensitive information that competitors and/or suppliers could use to gain a competitive advantage over Terumo Medical Corporation. Competitors and/or suppliers could also use the information about the ███████████████, and the ███████████████, to gain a competitive advantage.

- Exhibit 7 is ███████████████ in Exhibit 6. It is duplicative of Exhibit 6 and the redacted information should be withheld for the same reasons.

- Exhibit 8, the transcript of the 30(b)(6) Deposition of Terumo Neuro contains the following competitively sensitive information: (1) Terumo Neuro's revenue figures (Ex. 8 at 20); (2) information about ███████████████ (Ex. 8 at 28-29, 33-34, 36, 41, 84-93, 95-98, 100-107); and (3) information about ███████████████ (Ex. 8 at 39-47, 93-95); (4) ███████████████ as described in Ex. 1 (Ex. 8 at 48-59, 61-83). Terumo Neuro's ███████████████ clearly constitutes competitively sensitive information that competitors and/or suppliers could use to gain a competitive advantage over Terumo Neuro. Further, information about ███████████████ is highly confidential information that competitors and/or suppliers could use to gain a competitive advantage over Terumo. Finally, ███████████████ which clearly constitutes competitively sensitive information that competitors and/or suppliers could use to gain a competitive advantage over Terumo Neuro.

## V. Conclusion

For the foregoing reasons, Terumo respectfully requests that this Court grant Terumo's proposed order for *in camera* treatment for the confidential documents that the litigants have indicated that they intend to introduce into evidence in connection with the preliminary injunction hearing this matter.

Dated: August 14, 2025                    Respectfully submitted,

/s/ *Ryan K. Quillian*

Ryan K. Quillian (admitted *pro hac vice*)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-5329
rquillian@cov.com

*Counsel for Non-Party Terumo Americas Holding, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that this document will be served on the Plaintiffs and Defendants in accordance with Federal Rule of Civil Procedure 5(a).

Date: August 14, 2025        /s/ *Ryan K. Quillian*
                             Ryan K. Quillian (*pro hac vice*)